Argued May 26, reversed July 13, rehearing denied September 14, 1920.

## EMMONS v. SOUTHERN PAC. CO.

(191 Pac. 333.)

**Railroads—Violation of Speed Ordinance Negligence.**

1. Running a train in violation of a speed ordinance is negligence *per se*.

**Municipal Corporations—Enabling Ordinance Construed as to Vote Permitting More Than One Reading at One Meeting; "Unanimous Vote."**

2. General enabling ordinance, providing that "no ordinance shall pass more than two readings at any one meeting, except by unanimous vote," *held* not to require a special unanimous vote to permit more than one reading at one meeting, the words "unanimous vote" having reference to the vote on the ordinance.

**Municipal Corporations—Ordinances Presumed Regularly Passed.**

3. In the absence of affirmative showing to the contrary, the necessary requirements will be presumed to have been complied with in the enactment of ordinances.

**Appeal and Error—Appellant cannot Complain of Favorable Error.**

4. Appellant cannot complain of error in his favor.

**Appeal and Error—Remarks of Counsel, not Duly Objected to, will not be Considered.**

5. Remarks of Counsel will not be reviewed on appeal, where appellant did not object to court's ruling on objection to remarks, or did not ask for a ruling thereon.

**Railroads—Rights and Duties at Public Crossing Stated.**

6. It is the duty equally of travelers and trainmen to use reasonable diligence to avoid a collision at a crossing, but the train has the right of way and the preference in passing the point of intersection.

**Railroads—Automobile Driver Held Contributorily Negligent.**

7. An automobile driver, who proceeded to cross the track with knowledge of approaching train and who so operated the automobile that it stalled on the track, and then made no effort to escape injury by the train *held* contributorily negligent.

**Railroads—Duty to Person on Track Stated.**

8. In the absence of knowledge to the contrary or some fact which ought to arouse his suspicion, motorman of electric train has a right to presume that one seen at a public crossing is in possession of all of his senses, and that care for his own safety will induce him to use them and to act on the warnings conveyed through them.

**Railroads—Reliance on Observance of Speed Ordinance Held not Justified.**

9. An automobile driver approaching a crossing has a right to presume that the railroad will obey a speed ordinance, but cannot rely on such presumption when she has knowledge of train approaching at a greater rate of speed than that allowed by the ordinance.

**Railroads—Last Clear Chance Doctrine Defined.**

10. Railroad is not liable for injuries to person on track under last clear chance doctrine if the negligence of such person continues down to the moment of the collision.

**Negligence—Last Clear Chance Doctrine Defined.**

11. The "last clear chance doctrine" applies only where defendant had actual knowledge of plaintiff's peril in time to prevent injury by the diligent use of the means at hand.

> [As to concurrent negligence of plaintiff as defeating recovery under last clear chance doctrine, see note in Ann. Cas. 1912B, 888.]

**Negligence—Last Clear Chance Doctrine must be Pleaded.**

12. To invoke the last clear chance doctrine, plaintiff must plead it.

**Railroads—Complaint Held not to Plead Last Clear Chance Doctrine.**

13. An automobile driver's complaint, alleging that the trainmen saw the automobile on the track in time to have stopped before reaching it, without alleging that they were aware that the driver was in danger, or that her engine had stopped while automobile was on the track, or that there was anything in her situation indicating that she was unable to move *held* insufficient to invoke the last clear chance doctrine.

> [As to accidents to automobiles at railroad crossings, see notes in Ann Cas. 1913B, 680; Ann. Cas. 1915B, 767.]

**Railroads—Knowledge of Peril Held Question for Jury.**

14. In an action for injuries to the driver of an automobile stalled on the track, whether the trainmen had actual knowledge of the driver's danger and her inability to extricate herself in time to avoid the injury *held* for jury.

**Trial—Directed Verdict Properly Refused on Sufficient Evidence not Within Pleadings.**

15. In an action for injury to an automobile driver in a collision, where the evidence was sufficient to go to the jury on the question of the railroad's liability under the last clear chance doctrine, though it was not sufficiently pleaded, the denial of motion for a directed verdict was proper, since plaintiff might be able to amend her complaint, and ought to have the opportunity to so do.

**Master and Servant—Judgment Against Employer Improper on Verdict Failing to Find Against Alleged Negligent Employee Joined as Defendant.**

16. In an action against an electric railroad and motorman for injuries in collision based on negligence of motorman, judgment for plaintiff against railroad on verdict against railroad, but not against motorman, will be reversed, where no judgment has been rendered for motorman, since railroad's liability must be predicated on motorman's negligence.

**Appeal and Error—Costs—Prevailing Party cannot Recover Costs and Disbursements Where Defeated on Appeal.**

17. Where cause must be reversed for a new trial, no notice will be taken of complaints as to cost bill of plaintiff, as in such case he is not entitled to recover costs of first trial.

**Appeal and Error—Error in Entering Judgment on Insufficient Verdict Reviewable Regardless of Motion for New Trial and Error in Refusing Amendment of Motion not Considered.**

18. Under Section 172, L. O. L., the error in entering judgment on an insufficient verdict presents a question of law reviewable on appeal, where the pleadings, verdict, and judgment upon which the question of whether court erred depends are on file in the Circuit Court, and are shown by the record, and error in refusing leave to amend motion for new trial in reference thereto is therefore negligible.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

The plaintiff instituted this action against the Southern Pacific Company, a Kentucky corporation, and its motorman, Jesse Woodson, who resides in Oregon. She claims to have been injured by a collision of one of the defendant's trains with an automobile which she was driving, accompanied by her

brother, in the town of Beaverton in this state. She
alleges that at the time of the accident the defendant
Woodson, as the employee of the defendant company,
was the motorman in charge of its train causing the
injury, and that the accident happened where the rail-
way track running in an easterly direction crosses
a public road known as the Portland-Hillsboro Road.
According to the complaint, this passageway is used
each day by pedestrians, wagons, bicycles, automo-
biles, and other vehicles, and on the day of the acci-
dent the plaintiff was driving the automobile men-
tioned in a southerly direction and across the track
at that point. The charging part of the complaint
reads thus:

"That on the 3d day of August, 1916, at the hour
of 7 P. M. the automobile which the plaintiff was care-
fully and cautiously driving became stalled upon the
defendant's railway track just west of the depot at
Beaverton, Oregon. That after the defendants saw
the said automobile standing on the said crossing
and while the automobile was so stalled on the de-
fendant's railway track, an electric train owned and
operated by the said defendants approached from the
west at a rate of speed prohibited by ordinance
number 25 of the said town of Beaverton, Oregon,
and at a rate of speed in excess of eight miles per
hour, and said train came down upon and struck the
plaintiff and the automobile in which plaintiff was
seated. That the time after the defendants saw said
automobile standing on the said crossing was ample
in which to stop said train before it struck said auto-
mobile. That defendants carelessly and negligently
and recklessly operated said train in a careless, neg-
ligent and reckless manner upon said main line rail-
road, at a speed greatly exceeding a safe speed at
that time and place. That defendant and defendant's
employees carelessly and negligently allowed and per-
mitted the said train to run through the said town

at a rate of speed prohibited by the ordinances of the said town of Beaverton, and at a rate of speed in excess of eight miles per hour. That defendants carelessly and negligently and recklessly failed to control or stop said train after the motorman who was operating said train and who was in charge thereof saw and knew, or, with the exercise of due care and caution, could have known and seen said automobile standing upon said railway track on the crossing ahead of said train, there being ample time within which said train could have been stopped and a collision with the plaintiff prevented; that defendants carelessly and negligently and recklessly, after the motorman who was operating said train saw and knew, or, with the exercise of due care and caution could have known and seen said automobile standing upon the said railway track on the crossing ahead of said train, carelessly and negligently allowed and permitted said train to violently strike and collide with the said automobile in which plaintiff was riding and the plaintiff, thereby throwing the said automobile and plaintiff off of the track without any fault of the plaintiff, causing her to be seriously and permanently injured."

The complaint also contains allegations descriptive of the injuries which plaintiff received, and averments of her damages.

The answer traverses the allegations of the complaint already quoted and particularly its averments respecting ordinance No. 25 of the town of Beaverton, regulating the speed of vehicles. It admits the corporate character of the town and the location of the railway track and its crossing of the Portland-Hillsboro Road at grade in Beaverton, and that the plaintiff at the time and place mentioned in her complaint was driving an automobile in a southerly direction on the road and across the track near the defendant company's station at Beaverton. The answer joins

issue with the complaint on other matters not neces-
sary to detail. Affirmatively, defendant's pleading
states, in substance, that at the time and place men-
tioned in the complaint, the defendant company's
train, while approaching the station. at Beaverton
and operated in a careful manner, struck the auto-
mobile driven by the plaintiff. It charges that the
collision and consequent injury to the plaintiff, if any,
were the result of her own carelessness and negligence
in operating the automobile and in failing to stop
it at a safe distance from the track, although she had
a full and unobstructed view of the track and the
approaching train; that she slowed down her car as
she approached the track until it stopped, or its mo-
tion was barely perceptible, and then suddenly, in
disregard of the whistle and ringing of the bell on
the train, started the automobile forward, and then
stopped it on the track immediately before the train,
so that the collision was inevitable, notwithstanding
the defendants used every means possible to stop and
prevent the collision; and that the same was the acci-
dent described in plaintiff's complaint.

A further defense sets out the corporate character
of the town of Beaverton, the passage by its town
council of ordinance No. 11, regulating the enactment
and taking effect of ordinances, and the attempted
passage of ordinance No. 25, regulating the speed of
vehicles in the town; and charges that by reason of
certain alleged defects in the passage of the latter
ordinance it is null and void. Under this head it is
specified that ordinance No. 25 was introduced, read
three times, and passed—all at the same meeting of
the council on August 5, 1912, without vote, consent,
or authorization by the council allowing the third
reading or posting of the said ordinance, and without

any first or third or any reading of said ordinance by sections, and that the certificate of the town recorder does not specify in what particular public places said ordinance No. 25 was posted.

The answer is challenged by the reply in material particulars. The cause was submitted to the jury, which returned the following verdict on February 8, 1919:

"In the Circuit Court of the State of Oregon for Multnomah County.

Oma Emmons,
                Plaintiff,
    vs.
Southern Pacific Co.,
                Defendant.

### Verdict.

"We, the jury, having been first impaneled and duly sworn and truly, to try the above-entitled cause, find for the plaintiff and assess the amount of damages at $5,000."

This was signed by the foreman and ten other jurors. The court discharged the jury, and entered judgment against the Southern Pacific Company alone, for the amount of the verdict. A cost bill was filed and certain objections were made by the company to the same. This defendant within the time allowed by the court filed a motion for a new trial on the following grounds:

"(1) The admission in evidence of ordinance No. 25, of the town of Beaverton, Oregon, relating to the regulations of speed in said town; and

"(2) Submitting to the jury a prior negligence of the defendant in running at excessive speed, under the ordinance of said town of Beaverton, under the doctrine of the last clear chance."

For want of time to hear unfinished business, the cause was continued until the following term, at which time the defendant company moved for leave to file an amended motion for a new trial, urging the following grounds in addition to those already mentioned:

"(3) In the execution and reception of an alleged verdict, purporting to be against the Southern Pacific Company, a corporation, alone, in that

"(a) Said alleged verdict is ambiguous, uncertain and void; and

"(b) Said alleged verdict purports to bind the Southern Pacific Company, a corporation, and does exonerate Jesse Woodson, employee and codefendant with said Southern Pacific Company, a corporation, upon whose negligence the defendant, Southern Pacific Company, could only be held liable."

The company also moved at the same time to vacate the judgment rendered against it on the verdict already quoted, and to enter a judgment in its favor and against the plaintiff, for the reason that the verdict exonerated the defendant, Woodson, on whose negligence alone the defendant company could be held, and that the company cannot be held liable when its employee is exonerated from negligence by the verdict.

The defendant Woodson, appearing separately, moved for judgment in his favor against the plaintiff, on the ground that the verdict is not against him, but in his favor. The court denied all of the motions mentioned and directed the judgment to stand as originally entered against the Southern Pacific Company, after making certain modifications in the cost bill filed by the plaintiff. The company alone appeals.                           REVERSED.

For appellant there was a brief over the names of *Mr. R. C. Nelson, Mr. A. C. Spencer* and *Mr. Robert R. Rankin,* with an oral argument by *Mr. Nelson.*

For respondent there was a brief over the names of *Mr. Chester A. Sheppard* and *Messrs. Richards & Richards,* with oral arguments by *Mr. Sheppard* and *Mr. Norman E. Richards.*

BURNETT, J.—Apparently there was an attempt in the complaint to state a cause of action for negligence of the defendants, and another count for injury inflicted in violation of what is known as the last clear chance doctrine. No motion to require the plaintiff to elect between these two different phases in her pleading appears in the record.

One of the chief complaints of the company is about the admission of ordinance No. 25 in evidence. It is urged that this enactment was not passed in the manner required by the general ordinance No. 11, regulating the passage of ordinances by the council of Beaverton. The first section of this general ordinance requires that every ordinance shall be read three times before passage, the first and third readings to be by sections and the second reading permissively by title only. This requirement appears therein:

"No ordinance shall pass more than two readings at any one meeting, except by unanimous vote. The final vote upon an ordinance shall be by ayes and nays, and the names of those voting aye and those voting nay shall be entered in the journal and no ordinance shall be deemed passed, unless it receives the affirmative vote of three members of the council."

It is also prescribed that upon the passage of any ordinance the enrolled copy shall be submitted to the mayor to write upon it "approved," with the date

thereof, and sign with his official title. The next step required is that the recorder shall, within five days of the enactment, post a copy of the ordinance in three public places in the town and thereupon certify the posting upon the enrolled copy of the ordinance, which certificate shall state the date and places of posting of said ordinance. This enabling enactment was passed June 7, 1909. Ordinance No. 25, regulating the speed of vehicles, etc., forbids the movement of any steam or electric engine, train, car, or automobile or other vehicle mentioned within the corporate limits of Beaverton, at a greater speed than eight miles an hour. The minutes of the council introduced in evidence show that there were present the mayor and all members of the council. So far as the passage of ordinance No. 25 is concerned, the following excerpt from the minutes of the council meeting at which it was enacted is all that appears of record:

> "Ord. 25. 1st reading.
> "Con Sprainer        Yes.
> "Con Summers        Yes.
> "Con Boring          Yes.
> "Con Bolger          Yes.

"Declared passed first reading.

> "Ord. 25. Second reading.
> "Con Summers        Yes.
> "Con Sprainer        Yes.
> "Con Boring          Yes.
> "Con Bolger          Yes.

"Declared passed on 2d reading.

> "Ord. 25. 3 & last reading.
> "Con Sprainer        Yes.
> "Con Summers        Yes.
> "Con Boring          Yes.
> "Con Bolger          Yes.

"Declared passed by the Council."

1. By the exhibits introduced in evidence it appears that this ordinance was approved by the mayor on the date of its passage. The recorder's affidavit appended thereto is that on August 5, 1912, "I posted three copies of the foregoing ordinance in three of the most public and conspicuous places in the town of Beaverton, and ,that they remained posted for the time required by law." The importance of this ordinance as an instrument of evidence rests in the holding of this court to the effect that violation of an ordinance in matters of the kind here in question, is negligence *per se: Northwest Door Co.* v. *Lewis Investment Co.,* 92 Or. 186 (180 Pac. 495); *Rudolph* v. *Portland Ry., L. & P. Co.,* 72 Or. 560 (144 Pac. 93); *Morgan* v. *Bross,* 64 Or. 63 (129 Pac. 118). Earlier decisions of this court were to the effect that a violation of a statute or an ordinance was merely evidence of negligence, but the later decisions have committed the court to the doctrine that the violation of a statute or ordinance is negligence *per se.*

2. Recurring to the question of whether the ordinance was enacted or not, we learn from the minutes that the council was unanimous on all the votes on the first, second, and third readings of the ordinance. The language of the general enabling ordinance relating to the passage of city laws says:

"No ordinance shall pass more than two readings at any one meeting, except by unanimous vote."

3. This does not bear out the contention of the defendant, to the effect that there must appear of record a special unanimous vote to permit more than one reading of a proposed city law at one meeting. As the vote was unanimous on all of the readings, it brings the procedure within the exception, "by unanimous vote." In other words, as the vote was at all

97 Or.—18

times unanimous, it sufficed to pass the ordinance under the terms of the exception. Moreover, if it were anywhere provided in the rules of the council that a separate vote, giving unanimous consent to three readings at the same meeting, should be necessary, it would still be presumed, in the absence of any showing to the contrary, that the condition had been observed. As said in *Portland* v. *Yick,* 44 Or. 439, 442 (75 Pac. 706, 102 Am. St. Rep. 633):

"Every reasonable presumption is to be made in favor of the legislative proceedings; and when the Constitution does not require certain proceedings to be entered in the journal, the absence of such a record will not invalidate a law. It will not be presumed, from the mere silence of the journal, that either house has exceeded its authority or disregarded constitutional requirements in the passage of legislative acts."

This same rule was followed in *State ex rel.* v. *Boyer,* 84 Or. 513 (165 Pac. 587). We hold, then, that in the absence of any affirmative showing on the subject, the mere silence of the city record on the subject does not establish that the rules were violated in the passage of the ordinance. The failure of the recorder properly to certify the performance of his ministerial duty to post the ordinance after its passage cannot be allowed to thwart the legislative will of the city council as expressed in its ordinance. We are of the opinion, therefore, that on the showing made, the validity of the ordinance is not impeached, and that the court committed no error in admitting it in evidence.

In connection with the ordinance complaint is made of this instruction to the jury:

"If you find from a preponderance of the evidence that this accident occurred within the corporate lim-

its of the town of Beaverton; that there was then in force an ordinance of said town limiting the speed of trains to eight miles an hour; that at the time and place of this accident the defendants operated defendant's train at a rate of speed in excess of eight miles per hour, in violation of said ordinance, then the defendants would be guilty of negligence."

4. It is argued that this left to the jury the question of whether the ordinance was in effect or not. Section 90, L. O. L., prescribes a mode of pleading an ordinance of any incorporated city, town, or village to the effect that it shall be sufficient to refer to such an ordinance by its title or the date of its approval, and that courts shall take judicial notice thereof. The error complained of, so far as the charge of the court left it to the jury to determine whether or not there was such an ordinance, was favorable to the defendant, because it placed an additional obstacle in the way of plaintiff's recovery. The court with all of the record before it, and in the absence of anything affirmatively to dispute the validity of the ordinance, ought to have told the jury that it was the law of the city and that a violation of it was negligence. For the reasons stated, the defendant cannot complain of this error.

5. A motion for postponement of the trial had been filed by the defendant on the ground of absence of witnesses. To avert the consequent delay, the plaintiff admitted that the witnesses would testify as stated, if they were called. During the reading of the statement of the expected testimony of those desired witnesses, counsel for the plaintiff remarked to the jury in substance that the statement of one of the witnesses was not taken before a proper tribunal, but was taken before a board called by the

Southern Pacific Company for an investigation. The bill of exceptions shows that the defendant objected to this remark of counsel for plaintiff, but did not object to any ruling of the court or ask for a decision by the court. This presents nothing for review; it is only erroneous rulings of the trial judge duly objected to that can be reviewed in this court.

6. By way of protasis, it is proper to reiterate the oft-repeated rule that the rights of travelers on a highway and of a railway company on its track intersecting the public street or road, are reciprocal, and that it is the duty equally of the traveler on the highway and those who operate the train on the railway track to use reasonable diligence to avoid collision at a crossing, with the qualification that the train has the right of way and the preference in passing the point of intersection: *Palmer* v. *Portland Ry., L. & P. Co.,* 56 Or. 262 (108 Pac. 211, 50 Am. & Eng. R. Cas. (N. S.) 68); *Robison* v. *Oregon-Wash. R. & N. Co.,* 90 Or. 490 (176 Pac 594). It is thus stated in *Vizacchero* v. *Rhode Island Co.,* 26 R. I. 392 (59 Atl. 105, 69 L. R. A. 188):

"It was just as much the duty of plaintiff's intestate to avoid the consequences of the defendant's negligence, if there was any, as for the defendant's servant to avoid the consequences of the intestate's negligence if by any care and foresight he could have done so."

Automobiles and electric trains, especially, are self-propelled vehicles, measurably on the same footing in possibilities and capabilities respecting each other at crossings. Instead of being all or largely on one side, the obligation to use care and prudence rests alike upon both parties. As its direction of movement is fixed by its rails and it has acquired the

right of way by the exercise of eminent domain the railway manifestly has the preference at the point of passage, over the automobile which can vary its course.

The scene of the accident in question is in Beaverton, where the highway leading from Portland to Hillsboro passes through the town and across the tracks of the defendant company. The highway enters Beaverton from the east, practically parallel with the railway track, and at a distance of probably 40 or 50 feet from the rails, turns south, and crosses the railroad just west of the station at Beaverton. On the occasion mentioned, the plaintiff, accompanied by her brother, was driving an automobile on their way from Portland to Beaverton. They stopped for a few minutes at a confectionery store on the street running east and west. From this point, even, they had an unobstructed view of the railway track to the west from whence the train came, for at least a quarter of a mile. Having finished their errand at the confectionery, they proceeded on their way and turned south to cross the railway track. At the turn, both the plaintiff and her brother say that they saw the train approaching from the west, about, as they say, at "the second switch," which the scale on the map introduced in evidence shows to be between 350 and 400 feet from the crossing. The plaintiff testifies:

"Just as we got on the track the engine died from some cause or other, and the train struck us soon after that. When the automobile stopped, the train was probably about the second switch. I was realizing—I realized then the predicament we were in; that the train was coming at a very high rate of speed, coming down upon us, and I didn't do anything, only I was thinking probably for some reason

or other I could get the machine to go on, or it might go on; and my brother was standing up in the car in the meantime. * * I don't know what I did. I was thinking that some way or other I might get the machine to go on, but, of course, it wasn't a self-starter, and I realized that I couldn't start it that way, so I did nothing but just sit there."

Her brother testifies, in substance, that they saw the train after they turned towards the track; that they were about 25 feet from the rails; that the train was about at the second switch; and that it was then approaching at about 12 or 15 miles an hour. He stated further:

"The engine went dead just as we went on to the track. * * I stood up, turned and looked at the train and waved to the motorman to stop."

Questioned on the subject, he answered:

"Well, I don't know as I tried to start the auto, or anything. I know that I didn't, because there was no use. * * I thought there was more chance of stopping the train."

The testimony discloses that the front wheels of the automobile had cleared the track and the rear wheels were between the rails when the train struck the automobile and turned it around, so that it headed north instead of south and was pushed off the track. The brother was pitched through the windshield, sustaining some minor injuries, while the plaintiff herself was not thrown out of the car, but received some injuries to her right shoulder, and upper arm.

7. Recurring to the *quasi*-double aspect of the case made by the complaint, and considering the phase thereof in which negligence of the defendants is charged by the pleading and opposed by a counter-charge of contributory negligence, it would seem that

a strong case of contributory negligence was made out against the plaintiff. She admits seeing the train approaching, and that it was coming at a high rate of speed. It is true, on the one hand, as stated in *Adam* v. *Union Electric Co.,* 138 Iowa, 437 (116 N. W. 332), a case of collision between a horse and buggy and a street-car:

"Upon observing a car in the distance the driver of a vehicle can neither recklessly drive upon the crossing in a race with the car, nor is he arbitrarily required to stop his vehicle and wait for its passage. The right of each to the use of the highway is protected, and neither is permitted recklessly to expose the other to danger. If the driver observes a car on the line at such distance that in the exercise of ordinary prudence he believes he can safely cross, and in undertaking to do so a collision occurs, this cannot be attributed to negligence on his part."

8. On the other hand, in the absence of knowledge to the contrary or some fact which ought to arouse his suspicion that this is not true, the man in charge of the train has a right to presume that anyone seen at a public crossing or elsewhere on the track is in possession of all of his senses, and that care for his own safety will induce him to use them, and then to act on the warnings conveyed through them: *Union Pacific Co.* v. *Cappier,* 66 Kan. 649 (72 Pac. 281, 69 L. R. A. 513, and notes and authorities at page 550 of the latter citation).

9. It is argued that the plaintiff had a right to presume that the defendant would obey the ordinance and not exceed the speed limit prescribed. This is true as a principle, where there is nothing to notify one to the contrary. It does not apply when, as in this case, according to the plaintiff's own statement, she saw the train being operated at a greater speed

than the ordinance allowed, and that the defendants were in the very act of doing so. It is not sound reason to say that in the face of such knowledge one can rely upon such a presumption. It is akin to the corresponding principle, further to be noted, that although the engineer has a right to presume that anyone on the track will take care of himself and get out of the way before the train strikes him, yet this depends upon the absence of any other condition informing him to the contrary. As in other aspects of such situations, the rights and duties of the two parties are to be measured by practically the same standards. If the railway company were charged with negligence in running its train over an injured man, it would be poor answer for it to say:

"It is true, my train ran against you, but the reason was that the engineer in charge was unskillful, and so managed the locomotive that instead of applying the brakes he put on more steam and accelerated the train."

On the other hand, as in this instance, it would be poor answer to a charge of contributory negligence to say:

"It is true, I saw the train coming at a high rate of speed, within four hundred feet of the crossing, yet, instead of either stopping or hurrying along across the track, I proceeded very slowly, and so managed my engine that I stopped it and stalled the car on the track immediately in front of the train."

Considering the case, therefore, as one of negligence charged on one side, and contributory negligence on the other, it would seem that the testimony of the plaintiff herself makes out a plain case of contributory negligence. It is like the case of *Lawrence v. Fitchburg etc. Ry. Co.*, 201 Mass. 489 (87 N. E.

898).   In that instance the plaintiff stalled his auto-
mobile adjacent to the track of the railway company
where the train would strike it.   There was evidence
that the automobile could have been seen by the train-
men for at least 500 feet away, especially as the plain-
tiff's wife was standing up on the seat of the auto-
mobile, signaling to the train.   After setting this
down as negligence on the part of the defendant, Mr.
Justice SHELDON said:

"The plaintiff and his wife both realized fully their
dangerous position.   They knew that cars passed the
place once about every fifteen minutes.   They had
overtaken and passed this very car about one mile
back from the place of the accident.   After their ma-
chine was stalled and while the plaintiff was endeav-
oring to crank it and get it into motion, they saw the
headlight of this car, at a distance which the plaintiff
first said in his testimony 'might have been one thou-
sand feet,' later putting it at 'fully seven hundred
feet,' and afterwards at 'about five hundred feet
away when I first saw it.'   Mrs. Lawrence, however,
made no effort to get out of the car, and merely,
when the car was about one hundred feet away, stood
up and signaled with her hand to the motorman.
The only effort which the plaintiff made to get him-
self or his wife out of their perilous position was
that, in his own words, he 'did the best he could to
crank the car, and used his best effort to start it.'
It is true that the machinery of the automobile would
have been in the way of Mrs. Lawrence's getting
out of it on the right-hand side, which was that away
from the car; and the plaintiff testified that it would
have been unsafe for him to step in front of the ap-
proaching car, even when it was five hundred feet
away, coming at the rate that it was.   He said in
direct examination that the reason why he did not
get out of the way was because he thought the car
would stop.   In cross-examination he said that it
never occurred to him to get out of the way. * * She

[Mrs. Lawrence] testified that when she first saw the electric car coming around the corner she would have had plenty of time to get out, and that the reason she did not do so was because she thought the motorman would see the automobile and stop.''

After this statement the court said:

''It is impossible to avoid the conclusion that both of these plaintiffs chose to put all the responsibility for their personal safety upon the defendant's motorman. Upon their own testimony they made no attempt either to put themselves in safety or to give any warning to the motorman, either by signal or outcry or by running back, until it was too late to avoid the collision. They failed to take not only due care, but any care.''

The result was that in the case of the wife the exceptions to her judgment were sustained, and a like order was made in the action of the husband, unless he should elect to take judgment only for the damage to his automobile.

As to a question of negligence on one side and contributory negligence on the other, the case is plain, that the plaintiff's negligent management of the automobile contributed directly to her injury. If, instead of loitering along at a slow rate of speed, she had driven across the track promptly, the collision would not have occurred. But it is manifest that she not only loitered on the way, but so managed her machine as to stop the engine at the point of greatest danger. Such faulty control of the vehicle on the part of the railway company would be the greatest negligence. The same rule applies to the other party.

10, 11. The only attack upon the evidence was a motion for a directed verdict. A disposal of this question is affected by two considerations: One is, that the result of a directed verdict is to conclude the

controversy beyond recall; the other is, that there is an attempt in the complaint to ground the case not merely on the negligence of the defendants, but also on the doctrine of the last clear chance. We proceed at this point, then, to consider this doctrine. It may be stated thus in brief that, notwithstanding the negligence of the plaintiff or injured party in getting into a situation of danger, yet if that negligence has spent itself so that it becomes a condition rather than a factor, and the agent inflicting the injury, notwithstanding his previous negligence, has arrived at knowledge and appreciation of the plaintiff's danger, and then fails to use such means as it has at hand to avoid the injury, it is liable for the consequent damage. Or, stating it differently, it is the possession of the last or only remaining chance to avert the injury that charges the defendant, if at all. If simultaneously the plaintiff has a chance to escape the injury by exercising ordinary diligence, and does nothing to extricate himself from danger, the doctrine of last clear chance does not apply. Such a situation is one where the negligence of the plaintiff continues in operation to and including the very moment of collision. In other words, it is a distinct instance of contributory negligence. It is settled by the decisions of this court that the rule of last clear chance applies only where the defendant has actual knowledge of the perilous position of the plaintiff: *Stewart* v. *Portland Ry., L. & P. Co.*, 58 Or. 377 (141 Pac. 936, 63 Am. & Eng. R. Cas. (N. S.) 794); *Twitchell* v. *Thompson*, 78 Or. 285 (153 Pac. 45); *Provo* v. *Spokane P. & S. Co.*, 87 Or. 467 (170 Pac. 522).

Some courts have decided that the rule applies where the defendant knew, or by the exercise of rea-

sonable diligence ought to have known, of the peril of the plaintiff. An example of such precedents is *Nicol* v. *Oregon Wash. R. & N. Co.*, 71 Wash. 409 (128 Pac. 628, 43 L. R. A. (N. S.) 174), in which the opinion, probably through inadvertence, but none the less erroneously. criticises the deliverance of this court in *Stewart* v. *Portland Ry., L. & P.. Co.*, 58 Or. 377 (141 Pac. 936), in this language:

"The decision in the Stewart case was by a divided court. The minority were of the opinion that the negligence of the plaintiff had culminated before the injury, and hence that if the defendant by exercising ordinary care could have discovered his peril and prevented the injury, it was liable for not having done so."

The truth is that the decision in the Stewart case was unanimously rendered. This court has never to this writing divided on the doctrine under consideration. In the Nicol case the plaintiff had stalled his automobile at night on the railway track by getting off the planking between the rails, and could not extricate the car. Accordingly, he left it and ran along the track towards the approaching train several hundred feet, striking matches and waving his arms in an effort to signal the engineer, but without avail, although the engineer could have seen him in ample time to stop. In holding the defendant liable the court said:

"We have found no case involving facts similar to these present in this case, but we think the case readily accommodates itself to the principles announced in the authorities which we have reviewed."

The opinion in the Nicol case bears internal evidence of haste in preparation, and neither in its facts nor in its principles ought it to be regarded as con-

trolling of the issue before us. In our judgment, the addition of what the defendant ought to have known is not sound as a matter of law. It introduces the question of comparative negligence. It does not deal between the parties with equality. It excuses the negligence of the plaintiff at a certain point, but does not excuse that of the defendant at the same point. The true doctrine is that, granting that both parties are negligent as they approach the climax of the transaction, a situation may develop where the defendant on his part arrives at a knowledge and appreciation of the peril of the plaintiff and his inability to extricate himself therefrom, on the one hand, and on the other, that the plaintiff's negligence has ceased to operate as a factor, but remains only as a condition. At this point a new condition supervenes, in which all previous negligence of both parties is laid out of the account, and a new duty, dating only from that moment, arises on the part of the defendant, who is required then, and not until then, under the last clear chance doctrine, to use all of the means he has at hand to avert the injury. The obligation to avoid injury, however, is alike incumbent upon both parties, and if at that time the plaintiff had a chance to escape harm and yet did nothing to accomplish that result, he cannot complain because he himself did not embrace the last clear chance; and further, his own negligence continued to operate to the very point of collision. This rule is thus stated in 20 R. C. L., page 143:

"Not only must the defendant have had actual knowledge of the plaintiff's dangerous situation, but he must have been aware also of the plaintiff's unconsciousness of or inability to avert the peril. The plaintiff's right of recovery exists when the defendant, after having discovered his peril, having also

reasonable ground to believe him unconscious of danger, or unable to avoid it, might himself, by the exercise of ordinary diligence, have prevented the mischief which followed. It is when the engineer or motorman sees that a person 'is apparently placing himself in a position of danger without being aware of the approaching' train or car that 'it is plainly his duty to take cognizance of that fact and avoid injury to him if practicable.' If, on the other hand, the trainmen see a person on or near the track and there is nothing to indicate that he is unconscious of danger from the train, no duty devolved upon them to stop. And so where the motorman of an electric car sees a person on the track at a place where the car is plainly visible, he has the right to assume that such person will use his senses and get off the track in time to avoid injury. The doctrine of 'last clear chance,' under such circumstances, does not require the motorman to exercise care and diligence to ascertain whether such person, when first seen on the track, is so intoxicated that he will fail to use his senses and to avoid obvious danger. It follows from what has been stated that if the trainmen, being careful and experienced individuals, in the exercise of their best discretion do not regard a person on the track as being in danger, until, on getting nearer to him, he appears to be unconscious of his peril, and they then do all in their power to prevent an injury to him the company is not liable. Any evidence of 'discovered peril' will usually make the case for the jury.''

As to the necessity of showing actual knowledge on the part of the defendant, of the peril of the plaintiff, as a basis of recovery on the ground of the last clear chance, the principle is thus stated in the case of *Saginaw Lime & Lumber Co.* v. *Hale* (Ala.), 81 South. 15:

''Where plaintiff's intestate was killed while walking upon defendant's track, the duty of defendant's

switchman, riding on a car pushed by an engine, so far as subsequent negligence is concerned, dated, not from his discovery of intestate upon the track, but from the moment he became aware that intestate was ignorant of the approaching train.''

In the case of *Texas & P. Ry. Co.* v. *Breadow,* 90 Tex. 26 (36 S. W. 410), it is said:

''The principle, however, has no application in the absence of actual knowledge, on the part of the person inflicting the injury, of the peril of the party injured in time to avoid the injury by the use of the means and agencies then at hand. If he had no such knowledge, the new duty was not imposed, though it be clear that by the exercise of reasonable care he might have acquired same. The burden of proof was upon the plaintiff in this case, in order to recover for a breach of such new duty, to establish, not that the employees might, by the exercise of reasonable care, have acquired such knowledge, but that they actually possessed it.'' See, also, *Oklahoma City Ry. Co.* v. *Barkett,* 30 Okl. 38 (118 Pac. 350).

*Denver City Tramway Co.* v. *Cobb,* reported in 164 Fed. 41 (90 C. C. A. 459), was a case in which the plaintiff was injured by walking in front of a moving car. The court, speaking by Judge VAN DEVANTER, said there were two reasons why the last clear chance doctrine was not applicable: First, the exception does not apply where there was no negligence of the defendant supervening subsequently to that of the plaintiff, as where his negligence is continuous and operative down to the moment of the injury; and, second, the exception does not apply where the plaintiff's negligence or position of danger was not discovered by the defendant in time to avoid the injury. A long list of authorities is cited in support of the rule announced by the court.

In *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227 (53 Pac. 651), quoted with approval in *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748 (134 Pac. 709), it was held that the liability under the doctrine in question "is based upon the fact that defendant did actually know of the danger, not upon the proposition that he would have discovered the peril of plain- tiff but for remissness on his part. Under this rule, a defendant is not liable because he ought to have known." Many other precedents might be adduced to the doctrine that the last clear chance depends upon the actual knowledge and appreciation of the danger of the injured party; but the rule may be regarded as settled by our former decisions, already noted.

The other element, applicable to the plaintiff, is that the negligence of the injured party must have ceased to operate at the time of the collision, so as to become not a factor but a condition. The precept is thus taught in *French* v. *Grand Trunk Ry. Co.,* 76 Vt. 441 (58 Atl. 722):

"It is true that when a traveler has reached a point where he cannot help himself, cannot extricate himself, and vigilance on his part cannot avert the injury, his negligence in reaching that position becomes the condition, and not the proximate cause, of the injury, and will not preclude a recovery; but it is equally true that, if a traveler, when he reaches the point of collision, is in a situation to help himself, and, by a vigilant use of his eyes, ears, and physical strength to extricate himself and avoid injury, his negligence at that point will prevent a recovery, notwithstanding the fact that the trainmen could have stopped the train in season to have avoided injuring him. In such a case the negligence of the plaintiff is concurrent and operative at the time of the accident. When negligence is concurrent

and operative at the time of the collision, and contributes to it, there can be no recovery."

And, as said in *O'Brien* v. *McGlinchy*, 68 Me. 552:

"This rule applies usually in cases where the plaintiff, or his property, is in some position of danger from a threatened contact with some agency under the control of the defendant, when the plaintiff cannot, and the defendant can, prevent an injury. * * But this principle would not govern where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them."

It was held in *Norfolk & Western Ry. Co.* v. *Dean's Admr.*, 107 Va. 505 (59 S. E. 389), that where the presence of a person upon the track is observed by careful and experienced men operating the train, and they, in the exercise of their best discretion, do not regard him in danger, until on getting near to him, he appears to be unconscious of his peril, and they then do all in their power to prevent an injury to him, the company is not liable.

The plaintiff must show that at some time, in view of the entire situation, including his own negligence, the defendant was thereafter culpably negligent and that such negligence was the latest in succession of causes. In such a case the plaintiff's negligence is not the proximate cause of the injury. But this doctrine has no application to a case where both parties are equally guilty of the violation of an identical duty, the consequences of which continue on the part of both to the moment of the injury, and proximately contribute thereto: *Southern Ry. Co.* v. *Bailey*, 110 Va. 833 (67 S. E. 365, 27 L. R. A. (N. S.) 379).

In *Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31 (76 Pac. 719, 101 Am. St. Rep. 68), a woman was

walking on a path diagonally along the railway track, and was caught by an oncoming train. The case was twice heard before the Supreme Court of California, and finally concluded by denying her recovery. This excerpt is taken from the syllabus:

"The doctrine of last clear chance applies in cases where the defendant, knowing of plaintiff's danger, and that he cannot extricate himself from it, fails to do something which it is in his power to do to avoid the injury, but has no application to a case where both parties are guilty of concurrent acts of negligence, each of which, at the very time when the accident occurs, contributes to it.

"A locomotive engineer has the right to assume that one approaching a crossing has taken the precautions which the law requires him to take to insure his own safety, and that he is aware of the situation, and will remain in a place of safety, and the mere fact that he gives no evidence of a knowledge of the approach of the train does not indicate to the engineer that he is about to pass in front of it. * *

"Where, immediately after a person approaching a railroad track stepped upon the track, the engineer did all in his power to avert the accident, blowing the whistle, applying the air brakes, and reversing the engine, but without avail, he did all that the law required of him."

The prevailing opinion was written by the late Mr. Justice LORIGAN, who seems to have exhausted the subject in his discussion.

In the early case of *Cogswell* v. *Oregon & C. R. R. Co.,* 6 Or. 417, Mr. Justice BOISE wrote to the effect that an engineer in charge of a train approaching a man on the track "had a right to suppose that the deceased would observe the train by his senses, and that he was in no danger until the train was so near him that he ought to be leaving the track to avoid it." The opinion there points out, also, the imprac-

ticability of requiring a train to stop whenever any-one appears on the track ahead. It is true that Cogswell's decedent was walking laterally along the track, and was in a sense a trespasser; but when we take account of the railway's right of preference in passage, it is clear that the same presumption applies to one crossing the track on a public road.

In *Butler* v. *Rockland etc. Ry. Co.,* 99 Me. 149 (58 Atl. 775, 105 Am. St. Rep. 267), the plaintiff drove out of a private alley or passageway in front of a train, and was·injured. It was held that his contributory negligence continued up to the time of the collision, and that the defendant had a right to assume that one crossing the track would continue his movement or stop in safety: See, also, *Dyerson* v. *Union Pacific Ry. Co.,* 74 Kan. 528 (87 Pac. 680, 11 Ann. Cas. 207, 7 L. R. A. (N. S.) 132); *Himmel-wright* v. *Railroad Co.,* 82 Kan. 569 (109 Pac. 178). In many of the cases treating of the appearance of someone on the track, it is said to be the duty of the engineer or motorman in charge to sound an alarm by whistling or ringing a bell, or some such procedure. This is for the purpose of warning the individual who is subsequently injured. But where the plaintiff saw the train approaching, the failure of the trainmen to sound a whistle or ring a bell has no causal connection with the injury: *Lambert* v. *Southern Pacific Co.,* 146 Cal. 231 (79 Pac. 873). In the instant case it is conceded that the plaintiff saw the train approaching, and had all the notice that could have been given to her by any whistle or bell. As to trespassers upon a track, it has often been held that a railway company owes them no further duty than to avoid willfully injuring them. The plaintiff here, however, was not a trespasser. She

had all the rights of a traveler to cross the track. To her, as to all others, the presumption applies that she would take ordinary care of her own affairs, and would either cross the track without dalliance, or stop in safety; and in the absence of any notice to the contrary, the motorman was entitled to rely upon that presumption until it actually became apparent to him that she was in a position of peril and unable to extricate herself.

12. Resuming, then, the elements of the last clear chance doctrine or that of discovered peril, it depends upon these conditions: That the defendant must have had actual knowledge of the peril of the injured party in time to have prevented the accident by diligent use of the means at hand, irrespective of the negligence of the defendant occurring prior to this discovery. If, under such circumstances, the defendant errs in judgment only, he is not liable. The doctrine is also affected by the condition that it will not apply if the negligence of the plaintiff continues operative at the time of collision. If a plaintiff would recover by means of the last clear chance exception to the general rule that contributory negligence will defeat a recovery, the complaint should state facts to which the exception will apply. As stated by Mr. Justice McBRIDE in Stewart's case, *Stewart* v. *Portland Ry., L. & P. Co.,* 58 Or. 377 (141 Pac. 936):

"In order to invoke 'the last clear chance' doctrine, the plaintiff must plead and prove that the defendant, after perceiving the danger and in time to avoid it, negligently failed to do so"—citing *Drown* v. *Northern Ohio T. Co.,* 76 Ohio St. 234 (81 N. E. 327, 118 Am. St. Rep. 844, 10 L. R. A. (N. S.) 421).

13. The complaint in the instant case avers only that the defendants saw the automobile on the track

in ample time to have stopped before reaching the machine. There is no allegation that they knew more than this. It is not intimated that the defendant engineer was aware that plaintiff was in danger. The pleading contains nothing to eliminate the presumption upon which the trainmen had a right to rely, that she was in the possession of her faculties and would take care of herself and get off the track before the train reached the crossing. It is not stated, either in the pleadings or in the testimony, that the motorman knew that her engine had stopped, or that there was anything in her situation to indicate that she was unable to move. In short, the pleading must show a state of facts to which all the elements of the last clear chance doctrine would apply, if the plaintiff would rely upon that exception to the general rule in order to recover. It is one thing so negligently and unskillfully to operate an automobile as to "kill" its engine in a critical situation, and quite another to be inextricably caught in a perilous predicament within the knowledge of one inflicting a subsequent injury. It is a close question of fact as to whether the defendant knew of her peril in time to avoid the injury by subsequent diligence.

An extended note to *Union Pacific Ry. Co. v. Cappier*, 69 L. R. A. 513, 550, cites with approval the opinion of Mr. Chief Justice MARTIN in *Campbell* v. *Kansas City, Ft. S. & M. R. Co.*, 55 Kan. 536 (40 Pac. 997), teaching the doctrine to be that the man in charge of a train, seeing anyone on the railway track apparently in the possession of all of his faculties, not suffering from any disability and aware of the approach of the train, has a right to rely upon the presumption that the individual in view will get off the track, and this until the last moment, when it becomes apparent

that, owing to inadvertence or some disability, the man on the track is unable to extricate himself from the danger. The opinion there is to the effect that this moment means the last moment in which it would, or ought to, seem practicable to stop the train before collision, and that for a slight error of judgment on the part of the engineer the railway company ought not to be held responsible. Many authorities are cited in support of this rule.

14. The complaint, as above indicated, is not sufficient in its allegations of facts to justify the application of the last clear chance doctrine. There is enough in the testimony, however, to have carried this case to the jury on the question of fact involved. For instance, on behalf of the plaintiff, as showing her position of peril, we have the fact that she was stationary on the track. There is the testimony of her brother that he stood up in the car and waved his hand as if to stop the train. On the other hand, we have the presumption, already referred to, that the engineer was entitled to rely upon, to wit, that the plaintiff would get off the track before the train arrived; that she would take care of herself; and that there was nothing to indicate her danger except as stated. It was for the jury to weigh these opposing fragments of evidence, and determine by the preponderance of them whether the defendant actually perceived the danger of the plaintiff and her inability to extricate herself, in time to avert the injury. This, of course, leaves out of view the question of whether the negligence of the plaintiff continued operative at the time of the collision. Thus restricted, the case on this point presents a situation, where there is a question of fact to be determined, namely, whether the defendant's motorman discovered

the position of peril of the plaintiff in time to avoid the injury by subsequent diligence.

Although the plaintiff might be considered negligent in not attempting to start her car after it stopped on the track, yet a jury might think she did not have time before the train collided with her machine. This, in turn, might disclose that if she did not have time to start her car, neither did the motorman have time to stop his train after discovering that she could not move, with the result either that her negligence continued operative to and including the moment of impact, or that the accident was unavoidable. The testimony seems to present a mixed question of law and fact respecting the application of the last chance doctrine to be submitted to the jury.

In *Ridley* v. *Portland Taxicab Co.*, 90 Or. 520 (177 Pac. 429), this court, speaking by Mr. Justice HARRIS, discussed the distinction between a motion for a nonsuit, and a motion for a directed verdict, saying, in effect, that they give rise to the same inquiry as to the sufficiency of the evidence, but that while a nonsuit dismisses the action without prejudice to another on the same ground, the directed verdict is conclusive against any subsequent effort to recover for the same injury. The conclusion reached is stated thus:

"Even though a complaint omits some material allegation a motion for a directed verdict, based upon the fact of such omission, should be denied, especially where the objection can be cured by an amendment, and the plaintiff's evidence, if true, makes a case against the defendant"—citing authorities.

15. For this reason, there was no error in denying the motion for a directed verdict, although the rul-

ing might have been different if presented on a motion for a nonsuit. It seems possible that the plaintiff may be able to amend her complaint so as to state a cause of action within the exception known as the last clear chance doctrine, eliminating her previous contributory negligence. She ought to have the opportunity thus to amend. Whether she will be able to prove her case so newly stated, remains to be seen.

We pass to a consideration of the verdict already quoted. Construing it as any other writing, by its actual terms, there is nothing in it to charge the defendant Woodson. He is not in any way mentioned therein. No judgment against him properly could be rendered on such a verdict. It would be at least erroneous. But the liability of the defendant company, under the allegations of the complaint, and the undisputed testimony, depends entirely and exclusively upon the liability of Woodson, under the rule of *respondeat superior*. The only negligence imputed by the complaint is predicated upon his action or want of action. A leading case on this subject is *Doremus* v. *Root*, 23 Wash. 710 (63 Pac. 572, 54 L. R. A. 649). This was an action brought against a railway company and its conductor for an injury inflicted upon the plaintiff by a train in charge of the conductor; and, as in the instant case, the only negligence appearing was that of the conductor. The verdict was in this language:

"We, the jury, duly sworn and impaneled to try the above-entitled cause, find for the plaintiff and against the defendant, the Oregon-Washington Railroad & Navigation Company, and assess his damages at the sum of $15,100 and the costs of this action."

On this verdict judgment was rendered in favor of the defendant Root, the conductor, for his costs and

disbursements, and against the defendant company for the amount of the verdict, together with the plaintiff's costs and disbursements. The opinion was written by Mr. Justice FULLERTON, a learned and clear-headed jurist. He reached the conclusion that the defendants were not jointly or severally liable, but that the blame rested on the conductor primarily and the company successively, because of the principle of *respondeat superior*. After distinguishing between joint tort-feasors acting together in the same capacity, and a case where they are involved successively, the opinion goes on to state:

"But the defendants in this kind of action are in no sense joint tort-feasors, nor does their liability to the plaintiff rest upon the same or like grounds. The act of the employee, even in legal intendment, is not the act of his employer, unless the employer orders the act to be done or subsequently ratifies it. For injuries caused by the negligence of an employee not directed or ratified by the employer, the employee is liable because he committed the act which caused the injury, while the employer is liable, not as if the act were done by himself, but because of the doctrine of *respondeat superior*,—the rule of law which holds the master responsible for the negligent act of his servant committed while the servant is acting within the general scope of his employment, and engaged in his master's business. The primary liability to answer for such an act, therefore, rests upon the employee, and when the employer is compelled to answer in damages therefor he can recover over against the employee. * * So, where the employer is sued separately for the wrong, he can bind the employee in any judgment that may be obtained against him, by notifying the employee to come in and defend the action. * * So, also, in such an action, whether brought against the employer severally, or jointly with the employee, the gravamen of the charge is, and must be, the negligence of the

employee; and no recovery can be had unless it be proved, and found by the jury, that the defendant' was negligent. Stated in another way, if the employee who causes the injury is free from liability therefor, his employer must also be free from liability.''

Thus far the Doremus case is like the instant action. As stated, the trial court had entered a judgment in favor of the defendant Root, and based permissibly and probably upon the proposition that the court had jurisdiction of the persons of the litigants and of the subject matter, and that the judgment in favor of the conductor was one which was possible within the issues of the case, the court held that it was not void, but merely erroneous, and, not having been attacked by appeal or other direct proceeding, it was a final adjudication of the issues between the plaintiff and the conductor. Going further, the court held that, inasmuch as the conductor was completely released by the final adjudication in his favor, nothing remained but to render also a judgment in favor of the defendant company. The court said, however:

''Were the judgment against Root void, or were it before us for review upon this appeal, or on a separate appeal, by the present respondent, we would have no hesitancy in reversing both judgments, and remanding the cause for a retrial on the whole of the issues.''

Substantially, that is the situation which confronts us in the present instance. While the verdict does not fasten any liability upon Woodson, and hence does not charge the defendant company, there is no adjudication in favor of Woodson to act as an obstacle in reversing the judgment against the company. Confronted with the indispensable condition of proving negligence of Woodson in the manner charged,

the plaintiff has failed to establish such remissness of his duty, and hence has no basis for a recovery against the defendant company, his employer.

In *City of Anderson* v. *Fleming,* 160 Ind. 597 (67 N. E. 443, 66 L. R. A. 119), Fleming had previously failed in an action against a contractor for improving a street in the City of Anderson for injuries suffered by her in falling into an excavation left by that defendant unguarded in the street. She then brought an action directly against the city, which successfully set up the judgment in favor of the contractor in that former action in bar of the latter action. The case was made to depend upon the principle that primarily the city was responsible for keeping its streets in repair, but that, having contracted with another party to repair the street, providing as one of the terms of the stipulation that the contractor should keep the street safe for the use of pedestrians, it would have a right to call him in to defend an action against it. Hence, if owing to the failure of the injured party to recover from the contractor in a suit directly against him, his liability was barred, then the liability of the city also was extinguished. Its rights would be prejudiced by a judgment against it under such conditions, because it had lost its right to compel the contractor to respond over to it, as he had been exonerated by the judgment in his favor and was immune against reimbursement of the city.

In *Indiana Nitroglycerine etc. Co.* v. *Lippencott Glass Co.,* 165 Ind. 361 (75 N. E. 649), in an action against the corporation and its servant for negligence solely of the latter, it was held erroneous to charge the jury that a verdict might be rendered against either or both, as such an instruction would tend to deprive the corporation of its right of subrogation

against the negligent servant.  To the same effect in principle are *Jones* v. *Southern Ry. Co.,* 106 S. C. 20 (90 S. E. 183), and *Sparks* v. *Atlantic Coast Line Ry.,* 104 S. C. 266 (88 S. E. 739).  In *St. Louis etc. Ry. Co.* v. *Williams,* 55 Okl. 682 (155 Pac 249), the jury erased from the form of verdict the name of the engineer who was codefendant with the company and upon whose negligence alone the plaintiff predicated its cause of action.  A judgment against the company upon this verdict was reversed.  The same ruling was made in *Chicago, R. I. & P. Co.* v. *Austin,* 43 Okl. 698 (144 Pac. 1069); *McGinnis* v. *Chicago etc. Ry. Co.,* 200 Mo. 347 (96 S. W. 590, 118 Am. St. Rep. 661, 9 Ann. Cas. 656, 9 L. R. A. (N. S.) 680).  See, also, *Childress* v. *Lake Erie etc. Co.,* 182 Ind. 251 (105 N. E. 467); *New Orleans etc. Co.* v. *Jopes,* 142 U. S. 18 (35 L. Ed. 919, 12 Sup. Ct. Rep. 109, see, also, Rose's U. S. Notes); *Chicago, R. I. & P. Co.* v. *Reinhart,* 61 Okl. 72 (160 Pac. 51); *Stevick* v. *Northern Pacific Ry. Co.,* 39 Wash. 501 (81 Pac. 999); *Pangburn* v. *Buick Motor Co.,* 211 N. Y. 288 (105 N. E. 423); *Fimple* v. *Southern Pacific Co.,* 38 Cal. App. 727 (177 Pac. 871).

16. The case before us, then, is like the Doremus case, so clearly discussed by Mr. Justice FULLERTON, up to the rendition of the judgment against the defendant.  It is not cumbered, as that case was, by a judgment in favor of the codefendant from which no appeal had been taken.  The case is ripe for the determination which the court there said would have been reached but for the judgment in favor of the conductor.  The result is that the judgment of the Circuit Court must be reversed, and the cause remanded for further proceedings, with leave to the

parties to apply to the Circuit Court for permission to file amended pleadings if they are so advised.

17. Many errors are assigned respecting the instructions and refusals to instruct the jury. Owing to the length of this opinion, it is deemed impracticable to notice them in detail, as the rules respecting the doctrines of last clear chance, contributory negligence, discovered peril, and the like, have been sufficiently indicated for the guidance of the Circuit Court. Some complaint was made about the ruling of the court on the cost bill of the plaintiff. No notice will be taken of this, as it becomes negligible under the rule laid down in *Jones Land & Livestock Co.* v. *Seawell,* 90 Or. 236, 242 (176 Pac. 186), where on the authority of *Wade* v. *Amalgamated Sugar Co.,* 71 Or. 75 (142 Pac. 350), and *City of Seaside* v. *Oregon Surety etc. Co.,* 87 Or. 624 (171 Pac. 396), it was held that the party successful in the Circuit Court but who was defeated on appeal has no right to recover the costs and disbursements of litigation the error of which transpired on appeal.

18. Neither is it necessary to review the action of the Circuit Court in refusing to allow the company to amend its motion for a new trial. All the data required for the examination on appeal of the validity of the judgment in the respect embodied in the desired amendment appear in the record. It presents a case under the second clause of Section 172, L. O. L., where it is said:

"No exception need be taken or allowed to any decision upon a matter of law, when the same is entered in the journal, or made wholly upon matters in writing and on file in the court."

The pleadings are here, the verdict is here, and the judgment is here. The error of entering such a judg-

ment on such a verdict is one of law, made wholly upon written documents on file in the Circuit Court, and hence is reviewable on appeal on the record thus made.

The judgment is reversed.

Reversed.   Rehearing Denied.

McBride, C. J., and Benson and Harris, JJ., concur.