## McGINNIS v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

### Division One, December 22, 1906.

1. **NEGLIGENCE: Servant: Respondeat Superior: Nonfeasance.** For the nonfeasance or negligent failure of the servant to perform a duty, the servant is not liable to third parties, but the master under the rule of Respondeat Superior is liable.

2. ——: ——: ——: **Misfeasance.** For misfeasance by the servant or negligent performance of duty, both the servant and master are liable to third parties, under the rule of Respondeat Superior.

3. ——: ——: ——: ——: **Discharge of Servant.** Where the servant is charged with misfeasance, and he and the master are joined as defendants, and the petition imputes the

negligence of the servant to the master, a verdict of the jury finding the servant not guilty of negligence, discharges the master also, although the verdict is against the master.

4. ———: **Servant and Master: Discharge of Servant Discharges Master.** Where under the pleadings and evidence the master, if liable at all, is liable only by reason of the negligence of the servant in failing to properly perform a lawful duty, the master cannot be held liable unless the servant is; and a verdict in favor of the servant, joined with the master as a defendant, but finding the master guilty of negligence, cannot stand. Either both are liable, or neither is. And if plaintiff accepts such verdict, the judgment on the appeal of the master will be reversed.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED.

*M. A. Low, Paul E. Walker* and *Frank P. Sebree* for appellant.

The appellant, the master, and French, the servant, being jointly sued for the alleged negligence of the servant, and the verdict and judgment being in favor of the servant, the appellant was thereby acquitted of liability. And as such verdict and judgment also find against the appellant and adjudge it liable, such finding and judgment against the appellant are inconsistent, erroneous and unauthorized, and should be reversed. Deleplain v. Kansas City, 109 Mo. App. 107; State to use v. Coste, 36 Mo. 437; Henry v. Woods, 77 Mo. 277; Flannery v. Railroad, 23 Mo. App. 120, 97 Mo. 192; Schumpert v. Railroad, 65 S. C. 332; 24 Am. and Eng. Ency. Law (2 Ed.), 752; City of Anderson v. Fleming, 160 Ind. 597; Emma Silver Mining Co. v. Emma Silver Mining Co. of N. Y., 7 Fed. 401; Emery v. Fowler, 39 Me. 326; Anderson v. Railroad, 200 Ill. 329; Bailey v. Sundberg, 79 Fed. 583; Doremus v. Root, 23 Wash. 710; Stevick v. Railroad, 39 Wash. 501; In-

diana Nitroglycerin Co. v. Lippincott Glass Co., 75 N. E. 649; Ebsery v. Railroad, 164 Ill. 518; Railroad v. Pojes, 142 U. S. 18.

*Pross T. Cross* and *John A. Cross* for respondent.

(1) Appellant says that "the verdict and judgment being in favor of French, the servant, the appellant, the master, cannot be held liable." Such is not the law in this case. R. S. 1899, sec. 767; Moore v. Railroad, 64 Am. Dec. 83; 2 Rorer on Railroads, p. 1181; Berkson v. Railroad, 144 Mo. 211; Wiggin v. St. Louis, 135 Mo. 558; Norton v. St. Louis, 97 Mo. 537; O'Rourke v. Railroad, 142 Mo. 342; Thomas, Neg. Rule, Dec. and Opinions (2 Ed.), p. 1764; 1 Kinkead's Commentation on Neg., pp. 124, 125. The rule is well settled that the master and servant are joint tortfeasors when sued for the negligent act of the servant. 1 Kinkead's Com. on Neg., pp. 124-5. It is a well-established principle that wrongdoers are both jointly and severally liable, and plaintiff may elect to sue either one or all of them; or, having sued more than one, plaintiff has the right to dismiss as to any one of the defendants at any stage of the proceedings, and the defendant cannot complain that another person who is equally liable is not held also. Berkson v. Railroad, 144 Mo. 211. (2) But even though it should be conceded that the law is that a verdict discharging the servant, or one primarily liable, discharges the master, yet there is another very forceful and cogent reason why it would not be the rule in this case, and that is that, under the former decisions of this court, the test of liability against the servant is altogether different to the test of liability against the master. In other words, the master is liable for all the negligent acts of the servants, whether they be acts of "commission or omission," while the servant is liable in an action for damages to an injured third person only when he is guilty of acts of commission or posi-

tive misfeasance, and the servant is not liable for injuries to third persons, caused by his failure to act, or to perform his duty. And in this case, if the jury should have found that it was the duty of defendant French to help plaintiff hold and lift the car, and that he negligently failed and neglected to help plaintiff to so hold the car, that is, failed and omitted to act and do his duty, then his negligence would be an act of omission, or failure to act, for which the servant is not liable to plaintiff, and therefore the jury could properly find the servant not liable; but at the same time, the master being liable for all the negligenct acts of the servant, whether of commission or omission, it would be the duty of the jury to find against the master. Harriman v. Stowe, 57 Mo. 93; Buis v. Cook, 60 Mo. 391; Steinhauser v. Spraul, 114 Mo. 560, 127 Mo. 541; Story on Agency (9 Ed.), secs. 308, 309; Wharton's Agency, secs. 537, 538; Wharton on Neg. (2 Ed.), sec. 80; Bell v. Josselyn, 3 Gray 309; 1 Kinkead's Com. on Neg., pp. 124, 125; 5 Thompson's Com. on Neg., sec. 5771; Thomas's Neg. Rules, etc. (2 Ed.), p. 1764.

GRAVES, J.—Action for personal injury. Suit was instituted against defendant, the Chicago, Rock Island and Pacific Railway Company, and two of its employees, Welsh and French. Upon close of plaintiff's evidence the trial court sustained a demurrer to the evidence as to defendant Welsh, but overruled the demurrers of the other two defendants. After the evidence closed the case was submitted to the jury and a verdict returned in favor of defendant French, but against the defendant company in the sum of $10,000. Upon this verdict judgment was rendered against defendant company for the said $10,000 and costs. After unsuccessful motion for new trial, an appeal was duly perfected and taken to this court by the railway company.

In the petition it is alleged that plaintiff and defendants Welsh and French were employees of defendant railway as members of a gang of bridge carpenters; that defendant Welsh was foreman of the gang; that on the day of the accident, February 6, 1903, they were working near or at the station of Dearborn, Missouri; that defendant Welsh ordered a tool car to be loaded with some old bridge lumber and after the lumber was placed on the car, ordered some hand cars to be placed on top of the lumber; that after the cars were placed thereon with wheels down, the defendant Welsh ordered plaintiff and other co-laborers to turn them over; that the lumber was so placed on the car as to make the place dangerous to work on; the petition then proceeds as follows:

"That in obedience to said orders and commands of defendant Welsh, plaintiff and defendant French took hold of and lifted on the handles of one end or side of one of said hand cars, and two of said other hands took hold of and lifted on the handles of the other end of said car, and that when one side of said car was raised from off said timbers the defendant French while in the line of his duties to defendant railway company although knowing and seeing plaintiff's perilous position on the edge of said loaded car, did carelessly, negligently and wantonly let go of his hold on said car and ceased to help plaintiff to hold and lift the same, and wantonly and negligently shoved and pushed said car towards plaintiff, and that on account of all the above said hand car moved and slid towards and onto plaintiff, and he was, without any fault or negligence on his part whatever, pushed and forced over the side and edge of said loaded car and onto the ice and frozen ground below, with great force and violence, and permanently injured as hereinafter set out.

"That the negligence and wantonness on the part of the defendant was as follows:

"a.   That the defendant French, while so helping to lift and hold said hand car, negligently, wantonly and carelessly pushed and shoved said car onto and toward plaintiff.

"b.   That the defendant French, while helping to lift and hold said hand car as aforesaid under the said orders and commands of the said Welsh, negligently and wantonly let go his hold thereon and ceased to hold and help hold said hand car.

"c.   That the defendant Welsh, in the line of his duties to defendant railway company, negligently ordered and required plaintiff to get on top of said loaded car to assist in lifting said hand cars when it was dangerous and unsafe for plaintiff to do so, and this the said Welsh well knew, or could have known by the exercise of ordinary care."

The petition then described the character of the injuries and alleged damages in the sum of $25,000.

The separate answer of each defendant was practically the same (1) a general denial, (2) an admission that plaintiff and defendants Welsh and French were members of a gang of bridge carpenters and that plaintiff fell from the car and received slight injuries, but denied the seriousness of the injuries, (3) and a plea of contributory negligence. Reply is a general denial.

With the views we have of this case an extended statement of the evidence is not required. Plaintiff after testifying to his employment by defendant company and that defendants Welsh and French and three others, Ferguson, Kincade and Pardee, were likewise employed on the bridge gang of carpenters, and that Welsh was a carpenter the same as he was, "only he was a straw boss," described the manner of his injury thus:

"Q.   Go ahead, Mr. McGinnis, and in your own

·language tell what took place? A. Well, we had a hand car or push car for our tools. We had removed some of the bridge timber out of a couple of spans of bridge and Mr. Welsh come to the conclusion he would load this bridge timber. So we loaded it on our tool car, as you might call it. It was part boxed, about eight feet boxed and the balance a flat car. We started in to load the timber until it was above the top of the box car. After we got the timber on Mr. Welsh says, 'Now, take hold and run the push car on top of the bridge timber.' So we fastened the ropes to the rubble car and pulled it on.

"Q. State your position while putting the car on? A. My position was on the ground with Mr. Welsh. The other men were on top of the car, holding the ropes. We simply pulled it up until it got out of our reach and then Mr. Welsh told me to get on top of the car and help pull it up. I got up and we helped and then he ordered us to turn it over on its back, turn the wheels up—

"Q. Now state the position of the rubble car on top of this bridge timber? Did it set crossways or lengthways? A. Crossways, just as it come up.

"Q. Go ahead and state what you done. A. After we got it up there we all got around it. I believe it was Kincade that—

"Q. State what orders, if any, Mr. Welsh gave you there as to your position? A. Mr. French stood to the opposite corner and I was the left of French. Mr. Welsh said to me, 'You get around on the end of the car where you can do something.' Well, I stepped around and we started to pick it up. We got it on its edge and Mr. French give the car a shove, started the car up like that and the car fell and I just went off on the hard ground.

200 Sup.—23

"Q. When he shoved the car, state what direction it fell in? A. Well, it went south. I think the road runs in an angle, that way, at the depot there.

"Q. When he gave the shove, did he continue to hold the car? A. No, sir; he just shoved and stood back.

"Q. He let go of the car? A. He let go of the car.

"Q. At the time you was lifting the car on you said you was at the west end of the car? A. I was at the west end of the car.

"Q. Where was French? A. On the north side of the car.

"Q. On the north side of the car? A. Yes, sir; at the corner.

"Q. The same corner you was at the end of? A. Yes, sir.

"Q. Now, where were the other three men holding the car. A. On the east side of the car.

"Q. Then you and French were left— A. We were lifting there together.

"Q. To lift that entire part of the car? A. Yes, sir.

"Q. And when he let go of the car you had no other assistance? A. I had no other assistance. I was alone at the end of the car.

"Q. Were the three men on the other end still holding the car and lifting? A. They had hold, I expect, but I wasn't given any time. After it started to go I went off like a shot and dropped on the ground.

"Q. Did you have any notice of any kind? A. No, sir; no warning or notice of any kind whatever.

"Q. State, Mr. McGinnis, how much space there was between the west end of the push car and the edge of the car loaded with bridge timber for you to stand on? A. I expect, may be, fourteen inches. Not over the width of the stringer, if that much.

"Q. After you fell off state what was done? A. Well, after I dropped on the ground French he laughed at me.

"Q. French laughed at you? A. French laughed at me. Of course I thought my feet was all mashed to pieces and when I tried to stand up and couldn't do it I crawled on my hands and knees to get to the other side. They let me lay there until they loaded the car. After they finished loading the car they picked me up and carried me into the bunk car and French was still laughing."

On cross-examination, he describes the incident thus: "When we picked it up and got it on its side, about like that, Mr. French was here and I was at the end of the car. We turned it on its edge just like that and then Mr. French started it that way and he stepped back and the car fell with a slant like that. It was all done so quick that all I know is French started it and then he laughed. . . . I was holding the end, just the same as that, the rubble car in that position. When we got her started of course I had to follow the car around but instead of him going with me and helping me to let it down he started it and then let go. . . . He shoved it because I was right in there. There was nothing to stop it at all. I had hold of the end of the car expecting Mr. French to come around with me when he started it. Instead of doing that he shoved it and then stood back. Just stepped back and give it a shove."

The evidence of the plaintiff was such as to eliminate the question as to unsafe place in which to work, for he says it was safe. The defendants showed that four men were turning the rubble car. That two of them were lifting the car upon the edge and the plaintiff and another were there to catch it as it came over and ease it down. Defendant's contention is described by French in this language:

"Q. What were the positions of these four men

with regard to the push car when you turned it over?
A. That is, our position when we were turning it
over?

"Q. Yes. A. Why, there was myself and Kin-
cade on one side raising it up and McGinnis and Fer-
guson on the other to catch it as it come over and let
it down.

"Q. Suppose the main car was placed north and
south, that being the main car and that the push car,
illustrating the position of the men on the car and how
it was turned over? A. Yes, sir.

"Q. Turn it the other way? A. I can't tell my-
self which is north and south here. This is lengthways
of the car; this would be the push car across length-
ways of the main car. I got at this corner, Kincade
at this corner, and McGinnis and Ferguson over on
this side. When we raised it up in this manner they
was to catch it and let it down on the other side. Those
were our positions as near as I can remember.

"Q. Who raised the car up? A. Kincade and
myself.

"Q. How far did you raise it up? A. Quite per-
pendicular, until it stood on edge so they could get
hold of it and let it down.

"Q. Then the men on the other side were to catch
it and let it down? A. Yes, sir.

"Q. What was McGinnis' position on the other
side of the car? A. He was over here on this corner,
this side of the car. His corner was here and he was
to catch it and let it down.

"Q. Was he standing opposite Kincade or op-
posite you? A. Kincade.

"Q. Who was opposite your corner? A. John
Ferguson.

"Q. After you and Kincade had raised the car
up, what was done with it then? A. Why, it was
turned on over and it turned tolerably fast.

"Q.  Did they catch the car on the other side? A.  Ferguson caught his corner. I can't say whether McGinnis had hold of his corner or not, but the car was standing up that way and I couldn't tell on the other side whether he had hold of it or not. It's about as high as a man's head, nearly as high, but then as it came over Ferguson held his corner and McGinnis let loose and his corner swung that way and the next I saw McGinnis fell off the car. I suppose the car must have fallen on his foot but he said not, that it was just the jar of the ground that hurt his feet.

"Q.  After you and Kincade raised the car up, what was the duty of the men on the other side as to letting it down? A.  Take it and let it down so as to not let it fall.

"Q.  After you and Kincade raised it up there was nothing for you to do? A.  No, sir; that was our part of the work. Two men to raise it up and two to let it down.

"Q.  After you raised it up did you shove the car at all? A.  No, sir.

"Q.  You did not? A.  No, sir; not after it was perpendicular.

"Q.  Did you simply raise the car up? A.  Yes, sir."

Defendant's testimony further showed that there were no directions by defendant Welsh to plaintiffs.

The foregoing sufficiently sets out the evidence for a disposition of this case as we see the law.

From the negligence pleaded and the proof made, the railway company, if liable at all, is liable upon the principle of Respondeat Superior. There are two classes of cases falling under this doctrine, one wherein the master is held liable for the non-feasance or negligent failure of the servant to perform a duty, and the other where the master is held liable for the misfeasance or negligent performance of a duty. In the

one case the servant simply negligently fails to do what should have been done, and in the other he negligently does what should have been done and properly done.

In the first class of cases, the servant is not liable to third parties, but the master under the rule of Respondeat Superior is liable. In the second class both are liable to third parties. The servant, because he actually does the wrongful act occasioning the injury. The master, because under the rule of Respondeat Superior, he is liable for the negligent act of the agent done within the scope of his employment, and in the course and performance of his master's business. In either case the master has recourse upon the servant as for breach of duty to the master.

The case at bar is one for misfeasance, or one of the second class as above classified. Counsel for plaintiff evidently so understood it, or there would have been no joinder of the servant. But whether he did so understand and so act is immaterial, for the evidence so shows. We have quoted at length from the evidence for the reason that in the brief, counsel for plaintiff undertakes to argue that the act of French in lifting and pushing the rubble car in the way he did was misfeasance, but his act in failing to assist in letting down the car was non-feasance. This will not do. The thing to be done was to turn over a rubble car. French participated in that work and if he was guilty of negligence in doing the work, it was misfeasance.

By the verdict of the jury French was found not guilty of negligence and appellant claims, and we think rightfully, that if French is adjudged not guilty of the charge of negligence, it likewise stands discharged. If defendant is liable at all under the pleadings and evidence it is liable by reason of the negligence of French and not otherwise. It is a travesty upon the law to say that French has been guilty of no negligence in this

case, and by the same verdict and judgment say the defendant is guilty of negligence, through French, its servant, for which it is liable and should pay damages. Here were these men in the performance of a duty, that of loading their tools upon a car, which the evidence showed occurred every time they moved from one place to another, and that was every two or three days. The work to be done was lawful work, and work in the regular course of employment.

There are two parallel cases by the Supreme Court of Washington, wherein, in our judgment, the true rule is announced. In case of Doremus v. Root, 23 Wash. l. c. 715, the court says:

"Joint tortfeasors are liable to the injured person (other than that he may have but one satisfaction), as if the act causing the injury was the separate act of each of them, and they have, except in certain special cases, no right of contribution among themselves. But the defendants in this character of action are in no sense joint tortfeasors, nor does their liability to the plaintiff rest upon the same or like grounds. The act of an employee, even in legal intendment, is not the act of his employer, unless the employer either previously directs the act to be done or subsequently ratifies it. For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable because he committed the act which caused the injury, while the employer is liable, not as if the act was done by himself, but because of the doctrine of Respondeat Superior, the rule of law which holds the master responsible for the negligent act of his servant, committed while the servant is acting within the general scope of his employment and engaged in his master's business. The primary liability to answer for such an act, therefore, rests upon the employee, and when the employer is compellel to answer in damages therefor he can recover over against the

employee. [Oceanic Steamer Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. 461 (31 N. E. 987, 30 Am. St. Rep. 685); note to Village of Carterville v. Cook, 16 Am. St. Rep. 248; 1 Shearman & Redfield, Negligence (5 Ed.), sec. 242; 2 Van Fleet, Former Adjudication, p. 1162.]''

Again, on page 716, FULLERTON, J., in that case, further says: ''So also, in such an action, whether brought against the employer severally or jointly with the employee, the gravamen of the charge is, and must be, the negligence of the employee, and no recovery can be had unless it be proven, and found by the jury, that the employee was negligent. Stated in another way: if the employee who causes the injury is free from liability therefor, his employer must also be free from liability. This was held in Railroad v. Jopes, 142 U. S. 18 (12 Sup. Ct. Rep. 109).''

In the Doremus case, supra, the verdict was against defendant railway company, but said nothing as to defendant Root. By the judgment, Root, a conductor of the railway company, was exonerated of negligence, and the railroad company found liable, and it appealed. As in the case at bar, the plaintiff did not appeal from the judgment in favor of Root. The court reversed the judgment and remanded the case with directions to the lower court to enter judgment for the defendant.

In the case of Stevick v. Railroad, 39 Wash. l. c. 506, the court, through MOUNT, C. J., says:

''The only negligence alleged or attempted to be proven was that the engine was out of repair and was leaking steam, and that Gregg, the agent of the company, had notice to repair it. The defendant Gregg was joined in the action by reason of the fact that he was the master mechanic in charge of the engine, knew its condition, and, it is alleged, neglected to make the necessary repairs. The fact was admitted that the defendant Gregg was the master mechanic in charge of

the engine, and that it was his duty to keep it in repair. When the jury found that defendant Gregg was not negligent, then it necessarily followed that the railway company was not negligent, because the negligence of the railway company, as stated in the complaint, is based upon the negligence of Gregg. It is true that the complaint states 'that defendants, and both of them, negligently failed to repair said locomotive,' but the complaint, taken as a whole, shows that the negligence of the company is based entirely upon the alleged negligence of its servant Gregg in charge of its locomotives. The jury, having found that defendant Gregg was not negligent, and having returned a verdict in his favor, necessarily exonerated the railway company. [Doremus v. Root, 23 Wash. 719, 63 Pac. 572, 54 L. R. A. 649.]''

In this case the verdict was practically in the form of the verdict in the case at bar. It found for the defendant Gregg, the employee, and against the railway company. The court reversed the judgment and ordered the action dismissed.

In our State, in case of Delaplain v. Kansas City, 109 Mo. App. 1. c. 113, the Kansas City Court of Appeals has touched upon the question herein involved. The city and its contractor had been sued for negligence. The negligence was that of the contractor. Plaintiff had judgment and the lower court set aside the judgment for alleged errors in the instructions and refusal of instructions. The trial court had refused an instruction asked by Walsh, the contractor, directing a separate finding as to the two defendants. Upon this point Broaddus, J., says:

"But we cannot agree with the trial court that there was error in refusing to give defendant Walsh's instruction that the jury might find separately as to him. The city could not have been liable under the

proof unless the defendant Walsh had been guilty of negligence on his part.''

Because of the rule we here announce, it is generally held that where the action is one involving the doctrine of Respondeat Superior, a judgment in separate actions acquitting the servant bars the action against the master, and *vice versa.*

We are cited by respondent to the case of Berkson v. Railroad, 144 Mo. 211. That case does not conflict with the views herein expressed. In the case at bar every element of negligence was eliminated from the case by plaintiff's testimony, except the alleged negligence of the servant French. This negligence consisted of negligently performing a duty in the doing of a lawful act. It is a case where the master is entitled to contribution from the servant. The Berkson case is not in this case. It is one of joint tortfeasors, pure and simple, and in which there is no right to contribution. The court puts it upon that ground. On page 217, it is said:

''If the jury found that the cable car company was guilty of a tort in the nature of a trespass in entering upon and changing the grade of the street in front of plaintiff's property it was liable for the entire amount of damages caused by its act, without reference to the question as to who else or how many others participated in the same wrong. Between joint wrongdoers no right of contribution exists, that one can not be heard to complain that all guilty of the wrong have not been included in the same action or included in one common judgment rendered as the result of its prosecution.''

The action in the Berkson case was in the nature of a trespass, a pure tort, and a trespass which was directed to be committed by the railway company.

We are firmly of the opinion that in cases where the right to recover is dependent solely upon the doc-

trine of Respondeat Superior, and there is a finding that the servant, through whose negligence the master is attempted to be held liable, has not been negligent, as was true in the case in hand, there should be no judgment against the master.

The verdict in this case is a monstrosity. The jury say French was guilty of no negligence, yet, in the same breath, say the company was guilty of negligence, although nothing further was done by the company than what it did through French, its servant. Such a verdict is wrong, it is inconsistent and unreasonable.

The conclusion reached upon this proposition renders further inquiry as to other questions unnecessary.

French has been acquitted of the charge of negligence. Plaintiff takes no further action as to him by way of appeal or otherwise. The case falls strictly within the case in 39 Washington.

From the foregoing conclusions it follows that the judgment should be reversed and it is so ordered.

All concur.