ELLA WADE, Respondent, v. SAM B. CAMPBELL, COATES HOTEL COMPANY, A corporation, Appellant.

In the Kansas City Court of Appeals, June 26, 1922.

1. **FALSE IMPRISONMENT.** Employer of Private Detective Making Unauthorized Arrest, Held not Liable. In an action for false imprisonment where evidence showed hotel company through its manager employed a private detective to hunt for keys but did not authorize him to arrest anyone, and in the search, plaintiff, a maid, employed in the hotel, was arrested, at the suggestion of a city police officer acting with the detective, without the knowledge of the manager or his participation therein in any way, *held*, defendant, hotel company, was not liable.

2. **MASTER AND SERVANT:** Respondeat Superior: Judgment: Verdict. Exonerating Servant Sued Jointly with Employer Where Liability Rested Upon Doctrine of Respondeat Superior, Exonerated Employer and Judgment Against Employer Cannot Stand. Where hotel company and its manager were sued jointly, the verdict of

the jury exonerating the manager, *ipso facto* exonerated the hotel company and the judgment against the hotel company cannot stand as the liability of the hotel company rests on the doctrine of *respondeat superior* and under the evidence liability could arise, if at all, solely through the manager who hired the private detective and authorized him to hunt for the keys.

Appeal from the Circuit Court of Jackson County.— *Hon. Thos. B. Buckner,* Judge.

REVERSED.

*R. B. Kirwan* for respondent.

*Gerson B. Silverman* for appellant.

TRIMBLE, P. J.—Plaintiff, alleging false imprisonment as the basis of her cause of action, brought this suit for $5000 damages against the Coates Hotel Company, a corporation operating in Kansas City the hotel known as the Coates House, and also against Sam B. Campbell its Manager. At the close of the evidence each defendant separately demurred, but both were overruled and the case was sent to the jury.

It returned a verdict in favor of the defendant, Sam B. Campbell, but found for plaintiff as against the Coates Hotel Company and assessed damages against said defendant at the sum of $500. The hotel company has appealed.

Plaintiff, a negro girl, came from Chicago to Kansas City in July, 1919. After staying at a private residence for three weeks she went to the Hotel Metropole where she did "maid work" for four or five weeks. Then she went to the Coates House where she was day maid on the second floor, but later at her request she was changed to night maid and worked all over the house wherever she was sent. In that capacity she had the use of the housekeeper's bunch of pass keys by which access could be had to all the rooms in the house.

After having been at the hotel for about three weeks, these pass keys disappeared or were missing. Plaintiff did not know what became of them. She remembered having them between six and eight o'clock on the evening they disappeared. The last she remembered having them was in a room of fifth floor where she hurridly made ready a room recently vacated but which was immediately thereafter wanted by a new guest. She did not remember bringing them down from that room. When later that evening she went to do some work on the first and second floors she missed the keys, and, thinking the housekeeper had them, she spoke to her about them. The housekeeper said she did not have them but that she saw them in the Linen Room about 9 or 9:30 o'clock that evening when she went on an inspection tour of that floor.

While they were talking about this, the Manager, Mr. Campbell, came in and asked what was the matter. He was told by plaintiff that the keys were missing; that she remembered having them that evening on the fifth floor but did not remember bringing them down and that she thought she left them in the room on the fifth floor. He directed her to go upstairs and look for them, suggesting that perhaps she dropped them, but that doubtless they could be found in the morning and not to disturb any guests that night about the matter. He helped search the linen room for them. The search for the keys proving fruitless, the Manager said "Let them go. Maybe the day maids will find them to-morrow morning," and remarked to the housekeeper, Mrs. Richardson, "You should have had them when you went over the floor at 9:30."

This was Monday evening. Tuesday evening the housekeeper called the plaintiff into her room saying the detective wanted to see her. According to the evidence of plaintiff herself, the Manager, Mr. Campbell, the housekeeper and a man whom plaintiff did not know, were in there, and this man said to her in the presence of Campbell that he was the house detective. According

to Campbell, who was placed upon the witness stand by plaintiff, he was not in the room at the time.

Plaintiff says the detective said to her, "We want to know what you know about the keys." Plaintiff replied, "I hope you don't think I have got them." The detective said, "No, we don't. We don't think any of you have got them but we are asking everbody in the hotel about the keys."

The next afternoon about 3:30, plaintiff says she was called by the house keeper and told that some one wanted to speak to her. She complied and there met two detectives, one of whom was the same man who had said he was the house detective; that he said to her, "You have got those keys and I want you to give them up." Upon plaintiff's saying she didn't have them, he replied, "If you don't tell where they are, we are going to arrest you." She replied they would have to do so then as she could not tell where they were because she didn't know. The two men then took her to the station and locked her up where she was kept for forty-eight hours and then discharged by the police judge. She says Mr. Campbell was not present at the time of this conversation and arrest.

All of the evidence in relation to the alleged cause of action comes from witnesses placed upon the stand by plaintiff, so that none of the testimony bearing upon the case is from defendant's witnesses as the only evidence introduced by defendant was the deposition of plaintiff taken prior to the trial and some record evidence relating to a receivership for the Hotel Company.

Plaintiff placed upon the stand one of the men who arrested her, Weitkam by name. He testified that he was a member of the police force of Kansas City; that he was called to the Hotel by the Phil Kirk, Detective Agency; that he went there and learned from the detective working on the matter about the loss of the keys and that plaintiff was the last one to have them. He says he suggested that they take her to the police station and have the Chief talk to her, which they did; that the

detective working on the case was not the house detective but was a private detective from the Phil Kirk Detective Agency; that she was brought to the station and booked for investigation; that the names signed to the record were those of police officers of Kansas City and that neither the private detective nor Manager Campbell nor anybody connected with the hotel were on this record.

Plaintiff, being recalled for further cross-examination by defendant, admitted that she had never seen the man she called "the house detective" before the evening she was questioned by him the first time; that in her prior deposition she had not said anything about a house detective.

Plaintiff also placed the defendant, Sam B. Campbell, on the stand and he testified that the hotel had no house detective; that the man whom plaintiff called the house detective was sent to the Hotel by the Phil Kirk Detective Agency when he telephoned to Phil Kirk for a private detective, and when this man came, he directed him "to hunt up the keys," to "find the keys." He further testified that he did not request or direct anyone, either the private detective or any police officer or anyone else, to arrest plaintiff; that he did not know of the arrest; that he did not "appear" at police court against her, but was telephoned to, by some one he did not know who, that he was wanted there and he went down, and did not know of the arrest until he got down there and found that the girl was arrested; and that he preferred no charges against her, whatever.

Plaintiff admitted that all she remembered that Mr. Campbell said was that he wanted the keys, that she didn't remember his saying anything else.

Manifestly, there is no evidence that the man whom plaintiff calls "the house detective" was such. Her evidence discloses that she knew nothing about it herself and her other witnesses all say he was not the house detective, and that there was no such official. The point in this is that there is, therefore, no showing whatever in any way leading to the idea, or permitting such an in-

ference, that the Coates Hotel Company had anything whatever to do with instigating, causing or bringing about the arrest of the girl through any channel, officer or servant *other than its Manager Campbell*. Liability of the Hotel Company can be traced, if traced at all, *only* through Campbell who called the private detective and instructed him to hunt the keys. No connection of the Company with plaintiff's arrest could possibly appear from the evidence in any other way.

Now, the most that plaintiff's evidence tends to show in this regard is that Campbell did obtain a private detective and authorize him "to hunt the keys" or "to find the keys" but did not authorize, request, instigate, or even intimate in any way that he was to arrest the plaintiff or any one else; that the suggestion and decision to arrest the girl came from the city police officer, and the arrest was made without the knowledge of Campbell or his participation therein in any way. Unless it can be said that the arrest of the girl was within the scope of the private detective's employment to hunt the keys, then neither Campbell nor the Hotel Company would be liable. [Milton v. Missouri Pacific R. Co., 193 Mo. 46, 59-60.] See also the case of Lark v. Bande, 4 Mo. App. 186, where the defendant did not make the arrest nor request that it be done, but merely stated what he believed to be the facts and thereupon the officer made the arrest; it was held that the defendant was not liable.

But, however this may be, even if it could be said that the arrest of the plaintiff might have been found by the jury to be within the scope of the employment of the private detective, hired by Campbell, nevertheless, as heretofore stated, whatever was done by the corporate defendant, the Coates Hotel Company, was done *solely* through said Manager Campbell. Nothing was done by anyone else with authority to bind the Hotel Company or to connect it in any way with the arrest. Necessarily, therefore, Campbell himself was liable if the Hotel Company was, and if he was not, neither was the Hotel Company. So that, even if there were any evidence from

which the jury might have reasonably inferred that Campbell did instigate, cause, direct, or set in motion the arrest, or that, *through him,* the Coates Hotel Company was liable, still plaintiff can derive no possible benefit from any such inference, since the jury's verdict conclusively shows they did not draw any such inference, because the finding was in Campbell's favor. The liability of the Hotel Company can rest only on the doctrine of *respondent superior,* and, under the evidence, liability could arise, if at all, *solely through* Campbell who hired the private detective and authorized him to hunt for the keys. Consequently, when the verdict of the jury exonerated the servant, Campbell, it, *ipso facto,* exonerated the master, the Hotel Company. [McGinnis v. Chicago, etc., R. Co., 200 Mo. 347, 358; Hobbs v. Illinois Central R. Co., 171 Iowa, 624; Sparks v. Atlantic Coast Line R. Co., 104 S. C. 266; Vest v. Kresge, 213 S. W. 165, 167.]

Under any view that we are able to take of the case, the judgment against the Hotel Company cannot stand.

Accordingly it is reversed. The other judges concur.