Motion denied September 25, 1957, argued December 10, reversed
December 31, 1959, petition for rehearing denied
February 16, 1960

# KRAFT *v.* MONTGOMERY WARD & CO.,
## . INC. AND HUTCHINSON
315 P. 2d 559
348 P. 2d 239

Earl A. Fewless, Portland, for the motion.

No appearance contra.

PER CURIAM.

This is an action for damages in which defendant Montgomery Ward & Co. appeals from a judgment against it and in favor of plaintiff, and plaintiff cross-appeals from a judgment exonerating the individual defendant, Richard F. Hutchinson.

Appellant, Montgomery Ward & Co., has filed its short transcript on appeal and a bill of exceptions incorporating three volumes which are certified by the trial judge to contain all of the proceedings had at the trial and also incorporating certain documents which are certified to be all of the exhibits admitted in evidence. The envelope of exhibits submitted with the bill of exceptions contains those which were rejected as well as those which were received, although only the latter are referred to and incorporated in the bill of exceptions.

The plaintiff (respondent and cross-appellant) has not yet filed his short transcript, but he has obtained extensions of time from the trial court for the purpose of filing his short transcript and a bill of exceptions. He now moves this court for permission to adopt by reference and incorporate in his bill of exceptions the transcript of proceedings and exhibits which have been submitted with Montgomery Ward's bill of exceptions, including the exhibits rejected as well as those received.

For reasons to be hereafter stated, we deny the motion. The matter would not warrant publication of an opinion except for an apparently prevailing misconception with respect to the function of a bill of exceptions.

In *McCarty v. Hedges*, 309 P2d 186, 64 Adv Sh 531, we said:

"* * * our practice does not contemplate more than one bill of exceptions in a given case, at least where the one bill of exceptions includes all the testimony and proceedings had at the trial."

■■ What we there said with respect to a separate appeal by a co-defendant applies equally to a cross-appellant. Where one appellant has filed a bill of ex-

ceptions containing all of the proceedings at the trial, a cross-appellant may rely upon it in this court and need not file a duplicate. Ordinarily the party first giving notice of appeal is treated as the primary appellant, and he assumes the burden of initiating the bill of exceptions.

■ The Oregon Constitution (Amended Article VII, § 3) provides that "either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal." The reference to "*the* bill of exceptions" indicates an intent that there be but one bill of exceptions in a case.

■ If the bill of exceptions tendered by the primary appellant contains less than the entire proceedings, and if the cross-appellant (or co-appellant) seeks to raise points on appeal which require consideration of matters not included in the original bill, he may seek to have the additional material added to it by: (1) objecting to the bill of exceptions being settled without the addition of the other matters; (2) moving for amendment after the bill has been settled; or (3) submitting a supplemental bill of exceptions, which in theory would be a part of the original one. The possible "separate" bill of exceptions mentioned in *McCarty v. Hedges,* supra, would be such a supplemental bill.

■■ In any event, the contents of a bill of exceptions and the proceedings for its settlement are peculiarly within the province of the trial judge. Since it is a memorial of what occurred in his court, and he must certify it, this court cannot tell him what it shall contain. *Kubik v. Davis,* 76 Or 501, 147 P 552. When we consider the appeal on its merits, we may have to determine whether the bill of exceptions is sufficient to

present the points on which the appellant (or cross-appellant) relies. But that question cannot be determined on a preliminary motion. *Ohlson v. Steinhauser,* 218 Or 532, 315 P2d 136, decided September 11, 1957.

■ To the extent that the cross-appellant here seeks to incorporate by reference the exhibits which were offered and rejected at the trial (and which are not incorporated in the bill of exceptions submitted by Montgomery Ward, although they have been filed here with the others) his application should be to the trial court. If that court wishes to re-examine the exhibits before certifying them, they may be returned to the clerk of the trial court upon appropriate application.

Motion denied.

## ON THE MERITS

*John L. Schwabe,* Portland, argued the cause for appellant. With him on the briefs were Mautz, Souther, Spaulding, Denecke & Kinsey, Portland.

*Leo Levenson,* Portland, argued the cause for respondent. With him on the brief were Earl A. Fewless, Nels Peterson, and Samuel Jacobson, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN and KING, Justices.

KING, J. (Pro Tempore)

The plaintiff, Anton Kraft, brought this action for damages against Montgomery Ward & Co., Inc., and Richard F. Hutchinson and charged them with false arrest and false imprisonment on the first cause of action. On a second cause of action the plaintiff charged the defendant with malicious prosecution and asked for both compensatory and exemplary, or punitive, damages on each cause of action.

The case was tried before a jury in the circuit court of Multnomah County, Oregon, and the jury returned a verdict against the defendant Montgomery Ward & Co., Inc., for both compensatory and punitive damages on each cause of action. The court granted judgment against Montgomery Ward & Co., Inc., for the total amount of the damages found by the jury. The jury did not find a verdict against the defendant Hutchinson, and the court granted judgment and costs in his favor and against the plaintiff, Anton Kraft.

The defendant Montgomery Ward & Co., Inc., brings this appeal from that judgment, alleging numerous assignments of error which we will set forth and consider later. The plaintiff, Anton Kraft, cross-appealed against the defendant Richard F. Hutchinson.

The defendant Montgomery Ward & Co., Inc., operates a large retail store and mail-order house at 27th and Vaughn Streets, Portland, Oregon. It is substantially a national organization with stores and mail-order branches in various parts of the country and with its main or home office in Chicago, Illinois.

The defendant Richard F. Hutchinson was employed by Montgomery Ward & Co. and was second in charge of its protection department when the events giving rise to this law action occurred. His employment included the duty of looking after and superintending the protection of the defendant's property. It is the department which is charged with the responsibility of protecting the company's assets against losses by fire, malicious mischief, trespass, burglary and theft. The duties required cooperation with the city, county and state officers in the investigation of any such matters relating to the store and to render whatever assistance necessary in the filing and prosecution of such cases.

Mr. Hutchinson was chief investigator and assistant under Paul Seal, who headed the protection department. There were some nine or ten regular watchmen for the store who worked in the protection department.

The Montgomery Ward & Co. building in Portland, Oregon, was a nine-story building which covered practically an entire city block.

The plaintiff, Anton Kraft, had been working for Montgomery Ward & Co. for about three years, when on June 13, 1949, he was discharged by or at the instance of the defendant Richard F. Hutchinson.

On June 10, 1949, Mr. Kraft was operating a freight elevator, when his superior reported to Mr. Hutchinson that he smelled liquor on him and that it had happened several times before. Mr. Hutchinson investigated and satisfied himself that there was the smell of what he thought to be wine on Mr. Kraft. About that time he also questioned Mr. Kraft about taking articles from the store, and Mr. Kraft admitted that he had taken several articles which he claimed were damaged and discarded as refuse. He signed a statement to that effect and returned the articles to the store. He was then discharged as above mentioned.

On July 21, 1949, Ernest Zimmer was acting as a night watchman at the store. There were two watchmen on duty at that particular time. It took about two hours to make the entire round trip required of a watchman in inspecting all the floors, checking the locks on the doors and windows and such other duties. While one watchman made the rounds, the other remained at the office and subject to call. The store was equipped with what is called an A.D.T. system, and the watchman on patrol would check back with the office so that the one stationed there knew his location practically all the time.

On the morning of July 21, 1949, at approximately 2:19 a. m., Ernest Zimmer, while patrolling the ninth floor, suddenly came upon a man who was unknown to him. It apparently was quite a surprise to both of them, for they both just stared at each other for a short time. The man was about 20 or 30 feet from Mr. Zimmer, and was under a light where Mr. Zimmer could get a good look at him. They stood and looked at each other for from three to six seconds and then the man turned and ran. The watchman pursued him for a short distance, but being unarmed and realizing that the stranger might be armed, he returned to the watchman's desk, reported to his associate, and they turned in the alarm to the police and called Mr. Hutchinson at his home. Mr. Seal was out of town at the time.

The police made a careful search of the entire building and could find no one. They did not find any unlocked door or window, and neither the police nor the security officers or guards could find anything missing.

Mr. Zimmer made a written as well as an oral report of the incident. In that report he described the man encountered as about 35 or 40 years old, weighing about 150 pounds, about 5 feet 9 or 10 inches tall, and starting to get bald in front. He also told Mr. Hutchinson and the police officers that he felt certain he would recognize the man if he saw him again.

A short time later the personnel department of Montgomery Ward & Co. received information from the State Unemployment Commission that a hearing was to be held on the claim of Anton Kraft for compensation on August 3, 1949. The protection department arranged for Mr. Zimmer to be present at the

unemployment meeting and see if he could identify the party he had encountered on the ninth floor of the store in the early morning of July 21, 1949. He went to the meeting with Mr. Hutchinson and when the plaintiff, Anton Kraft, walked into the meeting room, Zimmer says he told Mr. Hutchinson "that he looked like the man." Mr. Hutchinson testified that he was told "that is the man."

Mr. Hutchinson then called the Portland Police Department and Sergeant Hugh Davenport answered the call and came to the Fitzpatrick Building, where the unemployment hearing was being held. Sergeant Davenport talked with Mr. Zimmer and stated that Mr. Zimmer positively identified Mr. Kraft as the man he had encountered in the store on the morning of July 21, 1949.

Sergeant Davenport then talked with the plaintiff, Anton Kraft, placed him under arrest, and after satisfying himself that Kraft was unarmed, took him in the police car to the police station, arriving there some time before noon. After a half hour or more of questioning, Mr. Kraft was placed in jail on a burglary not in a dwelling charge. There he was photographed and fingerprinted in the usual manner and held in custody until he was released on $1,000 bail at about 5 o'clock of that same day, August 3, 1949.

After his arrest and while he was still in jail, his house was searched by Mr. Hutchinson and a police officer. This search was with plaintiff's knowledge and consent. No property belonging to Montgomery Ward & Co. was found, and none was ever found in Mr. Kraft's possession except the articles previously mentioned, which he claimed to have taken from the trash piles or receptacles, and which he returned to the store.

The next day, August 4, 1949, Mr. Hutchinson and Mr. Zimmer went before Deputy District Attorney Murchison and were questioned regarding the case. Mr. Murchison apparently felt that there was not sufficient evidence to convict on a charge of burglary not in a dwelling and sent them to Mr. Phil Roth, a deputy city attorney, whose office was in the same city building and a few doors away from Mr. Murchison's office. They were again questioned by Mr. Roth, and he prepared a complaint charging trespass in violation of a city ordinance against Mr. Kraft, which complaint Mr. Hutchinson signed. The plaintiff herein was later tried on that charge before a jury in the city court and convicted. He later appealed to the circuit court of Multnomah County and after a jury trial on November 16, 1949, he was found not guilty and his city court conviction reversed.

After that second criminal trial Anton Kraft filed an action in the circuit court against these same defendants for damages on charges similar to those in this present action. That case was heard by a jury and verdict was returned for the plaintiff and against both defendants, Montgomery Ward & Co., Inc., and Richard F. Hutchinson. Motion for new trial was filed, heard by the court, and order made granting the new trial and setting aside the judgment and verdict.

The present case was tried on the third amended complaint, which was filed after the former judgment was set aside, and on the responsive pleadings to that third amended complaint.

Defendant Montgomery Ward & Co., Inc., bases its first assignment of error on the denying of its motion for judgment on the pleadings, and its second assignment is that the court erred in overruling its demurrer to plaintiff's third amended complaint.

The basic rules applied in passing upon these matters have been set out by this court many times, and under those rules we believe the trial court's rulings denying the motion for judgment on the pleadings and overruling the demurrer to the third amended complaint were proper, and we so hold.

By assignment of error No. 3 the defendant Montgomery Ward & Co. questions the lower court's ruling denying its motion for a directed verdict. The motion is quite long and will not be set out verbatim. The motion for directed verdict was directed to each cause of action and points out the reasons why the defendant feels that neither cause of action should be submitted to the jury.

We hold that the motion for directed verdict was properly denied as to both the first and second causes of action and will briefly state our reasons therefor.

Under the first cause of action, the alleged false arrest and false imprisonment were based on the claim that defendant Richard F. Hutchinson, a supervising employee of Montgomery Ward & Co. acting within the scope of his employment, caused the arrest and confinement of the plaintiff on a felony charge by a police officer without a warrant.

ORS 133.310 provides:

"A peace officer may arrest a person without a warrant:

"(1) For a crime committed or attempted in his presence;

"(2) When the person arrested has committed a felony, although not in his presence;

"(3) When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it; or * * *."

In this case the arrest being without a warrant, it must be justified under either § 2 or § 3 of ORS 133.310.

■ It has been held many times in Oregon that the defendant can only avoid liability for false arrest by pleading justification for the arrest. *Brown v. Meier & Frank Co.,* 160 Or 608, 86 P2d 79; *Christ v. McDonald,* 152 Or 494, 52 P2d 655; *Knight v. Baker,* 117 Or 492, 244 P 543.

We believe, however, that the affirmative matter pleaded in the answer, especially when not moved against, was sufficient to raise the issue. Then, of course, the real basis of the first cause of action in the complaint is that he was unlawfully and wrongfully imprisoned.

In this case it must be remembered that the police officer who made the arrest and who actually ordered the imprisonment is not a party defendant in the case. The action is against Montgomery Ward & Co. and Richard F. Hutchinson for allegedly instigating and causing the arrest and imprisonment.

35 CJS, False Imprisonment 523, § 22, states the general rule as follows:

> "In view of the general rule that a peace officer may, without a warrant, arrest a person whom he has probable cause to believe guilty of a felony, see Arrest § 6 b (a), a peace officer is not liable in an action for false imprisonment for an arrest on a charge of felony, although no felony has in fact been committed if he has reasonable grounds to suspect that such an offense has been committed and that the person arrested is guilty."

*Allen v. McCoy,* 135 Cal App 500, 27 P2d 423; *Kalkanes v. Willestoft,* 13 Wash2d 127, 124 P2d 219;

*Coles v. McNamara,* 131 Wash 377, 230 P 430; 25 CJ, False Imprisonment 463, note 23.

35 CJS, False Imprisonment 528, § 24, says:

"\* \* \* The person directing an unlawful arrest may be liable, although the officer acting is exonerated. A contrary doctrine, however, has been maintained by some courts to the effect that, if the arrest is made by an officer under circumstances rendering legal an arrest by him, the person who instigated it cannot be held liable, although such person's conduct would have been unlawful had he made the arrest."

*Bowles v. Creason,* 159 Or 129, 78 P2d 324; *American Railway Express Co. v. Summers,* 208 Ala 531, 94 So 737; and *Van v. Pacific Coast Co.,* (CCA Wash), 120 F 699, support the contrary doctrine.

■ Whether the police officer, Sergeant Davenport, had reasonable grounds for belief that the plaintiff, Anton Kraft, was guilty of a felony that would authorize or justify an arrest without a warrant in this case was for the jury to determine, as the facts testified to were in dispute, particularly as to the positiveness and extent of the identification. Likewise, the disagreement or dispute in the facts as brought forth by the testimony raised a jury question as to the reasonableness of the part taken by the defendant through the statements and actions of Richard F. Hutchinson, before the arrest and during the questioning at the police station. *Christ v. McDonald,* supra; *Allen v. William J. Burns International Detective Agency,* 121 Or 492, 256 P 197.

■ Likewise, we hold that there was sufficient evidence offered to raise a jury question on the second cause of action for malicious prosecution. While the

evidence relating to the claim that the defendants wilfully and fraudulently caused willful, false, and untrue testimony to be given on behalf of the prosecution by one Ernest Zimmer in the trial in the municipal court might not be too convincing if we were passing on the weight of the evidence, it was sufficient to be submitted to the jury under proper instructions. It was for the jury to determine from the facts whether or not the conviction of the plaintiff in the city court on a charge of trespass was obtained by fraudulent or other improper means. The evidence raised a jury question on the other allegations and defenses of the second cause of action.

Passing now to assignment of error No. 7, which relates to the court's sustaining plaintiff's objection to certain questions asked of defendant Hutchinson on direct examination, we hold, without setting out verbatim the questions, answers and objections, that the court did not commit error in those rulings. The questions were somewhat leading, suggestive and called for conclusions, rather than the actual conversation or statements.

Assignment of error No. 8 is:

"The Trial Court erred in permitting plaintiff to testify on direct examination in his own behalf concerning intimate details of plaintiff's background notwithstanding defendant's objection thereto."

This was a matter that rested largely in the discretion of the trial judge, and he did not abuse that discretion.

The same ruling would apply to assignment of error No. 10. It would go to the question of damages from the alleged false imprisonment and malicious

prosecution and the questioning was kept within reasonable bounds.

 Assignment of error No. 11 alleges error in permitting Captain Ferguson of the Portland Police Department to testify concerning what certain police records indicate.

Captain Ferguson was allowed to testify in considerable detail as to what certain police records indicated, including records and reports made by other officers and regarding other crimes; for instance:

"Q I show you plaintiff's exhibit 16 and ask you what it is.

"A The first sheet is a form called our Police Offense Report, subject thereof being breaking and entering an apartment, made on January 14, 1952, at 8:30 P.M., two officers, Gleason and Sirianni.

"Q Now, my question is now, Captain, does that report indicate that * * * ?"

Objections were made and overruled and the witness allowed to answer. The questions and answers referred to reports and other matters of which the witness had no personal knowledge. For instance, Captain Ferguson testified:

"The Chief, just before he left, handed me some reports which I left with you. I am not positive and don't remember whether or not those reports indicate that any of the complainants therein did view these pictures. The reports will indicate whether or not they did, however."

We think this assignment of error was well taken, and the questions and answers improper.

 Under assignment of error No. 12, the defendants objected to Captain Ferguson's testimony concerning the usual procedure in handling a person after such person has been arrested.

There was no good reason for allowing such testimony in this case. The captain had no personal knowledge of what happened in this particular case. Several officers and persons present, including the plaintiff himself, testified concerning what actually happened in this case at the police station and there is no serious dispute as to the procedure and no claim of unusual treatment.

■ The plaintiff had a right to offer evidence of his picture being taken and his fingerprints being recorded and being placed in the so-called "Mug Book" and of their circulation. We cannot, however, condone the extent to which the questions and answers of Captain Ferguson went and we hold it was error.

■ We have passed assignment of error No. 9 until this time, as it fits somewhat into the procedure just discussed.

Defendant's counsel was cross-examining the plaintiff and the following transpired:

"Q You said you were taken to the interrogation room. How did you know that it was an interrogation room?

"A Well, I figured that's what they call them when they go and put you through the mill.

"Q Had you ever been in that room before?
"A No.

"Q Did any one of the officers call that an interrogation room?
"A No, not that I remember.

"MR. FEWLESS: *They call it a rubber hose room.* [Emphasis added.]

"MR. SPAULDING: Now, Your Honor, I think in the light of a remark just made by counsel, that we have got a matter in Chambers here.

"THE COURT: What was the remark? Did you get it Mr. Reporter?

"THE REPORTER: Yes.

"THE COURT: Read it.

"(Whereupon the Reporter read the following):

"MR. FEWLESS: They call it the rubber hose room.

"MR. SPAULDING: Yes, we have a matter in chambers.

"THE COURT: That remark was entirely uncalled for, unnecessary, and counsel should not have made it. You will disregard it, ladies and gentlemen, in your consideration of this case.

"We will take a five-minute recess. I will see counsel in Chambers.

"You may step down, sir." (Witness temporarily excused.)

In chambers a motion for mistrial was made and denied by the court.

There was considerable discussion in chambers as to the manner and reasons for making the remark, and whether or not the jury heard it.

It was not only made so the reporter heard and reported it, but, inadvertently or not, it was re-read to the court in the presence of the jury.

This was a case where large sums were asked for as both compensatory and punitive damages, and where $40,000 was recovered against the defendant Montgomery Ward & Co. as punitive damages and $20,000 as compensatory damages. It was the type of case in which the jury's passion and prejudice could likely be very easily aroused. Who can say that the above-quoted statement, coupled with the other mentioned improper evidence did not influence the jury and the verdict they returned? We hold that error was committed and that it would have and probably did influ-

ence the jury. There was no good excuse for the remark, particularly when considered in the light of the entire transcript.

By assignment of error No. 6 the defendant moved to require the plantiff to elect whether he sought punitive damages and compensatory damages as a result of the first alleged cause of action or as a result of the second alleged cause of action.

No error was committed in denying the motion to elect. Plaintiff would be entitled to recover punitive damages on either or both causes of action if proper evidence and proof were offered.

The defendant would have been entitled to an instruction cautioning the jury against duplicating damages in each cause of action if such a proper instruction had been submitted to the court. It is, of course, difficult for a jury to determine and segregate the amount of damages to be awarded in a case of this type where there are two closely related causes of action. The remedy is by instructions and not by election, as the latter method would shut out one or the other of the plaintiff's causes of action.

That brings us to the vital question in this case, as raised by assignment of error Nos. 4 and 5, which can be considered together.

Assignment No. 4 states:

"The Court erred in entering judgment in favor of plaintiff and against defendant and in failing and refusing to enter judgment in favor of defendant Montgomery Ward against plaintiff."

Can a verdict which exonerated the employee, Richard F. Hutchinson, from liability for damages and holds only the master or employer, Montgomery Ward & Co., stand?

In 57 CJS, Master and Servant 421, § 619, it is said:

> "* * * As a general rule, where the master and servant are sued jointly in an action based solely on the tortious conduct of the servant, and the servant is acquitted, there can be no recovery against the master."

78 ALR 365 (1932); Restatement of Torts § 883, Comment (B) (1939); 2 Harper and James, Torts 1426 (1956).

This rule is specifically applicable to cases where the master is sued for false arrest or imprisonment caused by the servant, and when the servant is released the master is also exonerated. 35 ALR 645, 652.

This rule has been followed in Oregon in a great many cases, and this court has reversed judgments based on verdicts which held the master liable but released the servant. *Doty v. Southern Pacific Co.,* 186 Or 308, 335, 340, 207 P2d 131 (See dissenting opinion by Mr. Justice Brand); *Feazle v. Industrial Hospital Association,* 164 Or 630, 103 P2d 300; *Dare v. Boss et al.,* 111 Or 190, 198, 224 P 646; *Emmons v. Southern Pacific Co.,* 97 Or 263, 296, 302, 191 P 333.

The general rule seems to be that such verdicts against the employer alone cannot usually be sustained.

There are a number of exceptions to the above rule. This is particularly true where the master may be liable for the actions of other servants, as set out in *Fish v. Southern Pacific Co.,* 173 Or 294, 324, 143 P2d 917, 145 P2d 991; *Wills v. J. J. Newberry Co.,* 43 Cal App 2d 595, 111 P2d 346; *S. H. Kress Co. v. Maddox,* 201 Okla 190, 203 P2d 706; *Senske v. Washington Gas & Electric Co.,* 165 Wash 1, 4 P2d 523.

The general rule is also inapplicable where there

are separate grounds upon which to find the master liable. The general rule would also be ignored where the master made no timely objection. *Anderson v. Salt Lake City,* 79 Utah 324, 10 P2d 927.

A fourth exception will occur where the master subsequently ratified the act of his servant, or where the act was performed under the direction and supervision of the master. This would be closely related to the case where the master may be separately liable for his own acts. *Mims v. Bennett,* 160 SC 39, 158 SE 124.

The plaintiff, in his brief and argument, contends that this action is an exception to the general rule and that the judgment should be sustained. He recognizes the general rule that where the liability of the master is derivative, the exoneration of the servant excuses the master.

One of the plaintiff's main contentions is that Paul Seal, who was head of the protective department of Montgomery Ward & Co. at the time of the alleged incident and during the investigation and prosecution of the plaintiff, actively participated in and directed and ratified the alleged acts of Richard F. Hutchinson and Ernest Zimmer.

Stated differently, the plaintiff contends that when the master, acting through other servants and agents, not joined as parties, commits tortious acts or ratifies the acts of such other agents or servants, the master is not relieved by the exoneration of the other servant, who was a defendant in the complaint.

As pointed out above in the exceptions to the general rule, we agree generally with such an interpretation of the law.

In the present case, however, careful reading and

study of the pleadings, testimony and exhibits convinces us that this case does not come under any of the exceptions to the general rule. It seems apparent throughout the case that the plaintiff considered the acts of Richard F. Hutchinson and his alleged influence over Ernest Zimmer and others as the real basis for liability in this case.

The plaintiff called Paul Seal as an adverse witness and showed his connection with Montgomery Ward & Co., and that he learned of the charges against the plaintiff after his return to Portland. There is absolutely no proof that he ever influenced Mr. Hutchinson, Mr. Zimmer, the police or anybody else in their investigation of the case or in their testimony regarding it. There is absolutely no proof that Mr. Seal knew, or should have known, that any alleged false or exaggerated charges or testimony were made or given. There was nothing shown in Mr. Seal's actions to sustain the verdict against Montgomery Ward & Co.

Plaintiff also contends, but we think not too seriously, that the alleged acts of Ernest Zimmer would bind Montgomery Ward & Co. They contend that he was more than a menial servant, and that he possessed discretionary powers and authority. They cite *Pelton v. Gen. Motors Accept. Corp.*, 139 Or 198, 205, 7 P2d 263, 9 P2d 128. That case, referring to a basis for punitive damages, says:

> "* * * The action of Broadbent could well be looked upon as one of a managing officer and, therefore, what he did amounted to a participation by the corporation in the violation of the rights of the plaintiff."

That seems far greater authority than was reposed in Ernest Zimmer in this case. So far as the evidence

shows he was a mere watchman, who called the officers and his superior before taking any independent action.

The case of *Wade v. Campbell,* 211 Mo App 274, 243 SW 248, 250, says:

"* * * Whatever was done by the corporate defendant, the Coats Hotel Company, was done solely through said manager Campbell. Nothing was done by anyone else with authority to bind the hotel company, or to connect it in any way with the arrest. Necessarily, therefore, Campbell himself, was liable if the hotel company was, and, if he was not, neither was the hotel company. So that, even if there were any evidence from which the jury might have reasonably inferred that Campbell did instigate, cause, direct, or set in motion the arrest, or that, through him, the Coats Hotel Company was liable, still plaintiff can derive no possible benefit from any such inference, since the jury's verdict conclusively shows that they did not draw any such inference, because the finding was in Campbell's favor. The liability of the hotel company can rest only on the doctrine of respondeat superior, and, under the evidence, liability could arise, if at all, solely through Campbell, who hired the private detective and authorized him to hunt for the keys. Consequently, when the verdict of the jury exonerated the servant Campbell, it ipso facto exonerated the master hotel company."

We hold that the jury by their verdict found in favor of the defendant Hutchinson; that in this case Montgomery Ward & Co. could only be held on the doctrine of respondeat superior; consequently the release of the servant, Richard F. Hutchinson, released the master, Montgomery Ward & Co. *Emmons v. Southern Pacific Co.,* supra; *McGinnis v. Chicago etc. Ry. Co.,* 200 Mo 347, 98 SW 590, 118 ASR 661, 9 Ann Cas 656, 9 LRS NS 880; *Chicago R. I. & P. Ry. Co. v.*

*Austin,* 43 Okla 698, 144 P 1069; *Doremus v. Root,* 23 Wash 710, 63 P 572, 54 LRA 649.

Therefore, the judgment of the circuit court against Montgomery Ward & Co. must be reversed.

■ We are still faced with the question of whether the case ought to be remanded for a new trial as to one or both defendants.

In the case of *Emmons v. Southern Pacific Co.,* supra, it was reversed and remanded for further proceedings, primarily because no judgment had been entered against the servant, but only the master. In *Doremus v. Root,* supra, judgment was rendered against the master, but in favor of the servant as in the present case; but in the Doremus case there was no appeal by the plaintiff from the judgment against the servant-defendant. Appeal was only by the master-defendant against the plaintiff.

In the present case the plaintiff, Anton Kraft, filed a notice of appeal and cross-appeal against the defendant Richard F. Hutchinson. All questions raised in the cross-appeal have already been considered and passed on in this opinion, and we find nothing to sustain plaintiff's cross-appeal against the defendant Hutchinson, and it is denied.

On the basis, as mentioned before, that the master in this case, Montgomery Ward & Co., could only be held on the theory of respondeat superior, the case must be reversed as against said defendant. The judgment in favor of the defendant Hutchinson is affirmed. The judgment against Montgomery Ward & Co. is reversed and the cause remanded to the circuit court with directions to enter a judgment for said defendant.